In re Steven L. PETERSON and Judith
A. Peterson, Debtors.

Mark C. HALVERSON, Panel
Trustee, Appellant,

v.

Steven L. PETERSON and Judith A.
Peterson, Appellees.

No. 90–5016MN.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1990.

Decided Dec. 10, 1990.

Robert Halvorson, New Ulm, Minn., for
appellant.

Patrick Moriarty, New Ulm, Minn., for
appellees.

Before WOLLMAN, Circuit Judge,
FLOYD R. GIBSON, Senior Circuit
Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Mark C. Halverson, the bankruptcy
trustee in this matter, appeals from the
district court's[1] affirmance of the bank-
ruptcy court's[2] orders striking his objec-

---

1. The Honorable Paul A. Magnuson, United
States District Judge for the District of Minneso-
ta.

2. The Honorable Gregory F. Kishel, United
States Bankruptcy Judge for the District of
Minnesota.

tion to Steven and Judith Peterson's claimed homestead exemption and granting summary judgment on the claimed exemption in their favor. Halverson argues on appeal that the district court erred in striking his objection as untimely because the Petersons had actual notice of the objection and because the claimed exemption was invalid in the first place and thus there was no need to object. We affirm.

## I.

Steven and Judith Peterson (the Debtors) filed a voluntary bankruptcy petition under Chapter 7 on July 18, 1986. While administering the estate, Mark C. Halverson (the Trustee) discovered that the Debtors had applied for a building permit from Nicollet County, Minnesota to build a house on real estate which Steven Peterson's father, Lester Peterson, owned in fee. The Debtors had obtained the permit, built the house, and paid for all construction costs. The Debtors occupied this house as their residence. The Debtors never executed any deeds or conveyances that transferred title from Lester Peterson to them. In their initial bankruptcy schedules, the Debtors claimed no ownership interests or rights in the house, nor did they claim a homestead exemption. At the first creditors' meeting on August 27, 1986, the Debtors disclosed that they had built the house.

On September 30, 1986, the Trustee sent a letter to the Debtors informing them that he would seek to recover some of the value of the house for the bankruptcy estate. He suggested that to avoid this, the Debtors should amend their schedules to claim an interest in and exemption for the house. On August 11, 1987, the Trustee sent another letter to the Debtors, informing them that he might bring preferential transfer and fraudulent transfer actions to recover the house's value. The Debtors replied that neither action was applicable to them. The Trustee threatened litigation again in a May 2, 1988 letter.

Later that month, the Trustee began an adversary proceeding against the Debtors and Lester Peterson. The Trustee requested that the court transfer the value of the house to the bankruptcy estate, either by turnover pursuant to 11 U.S.C. § 542 or by severance and sale of the underlying real estate and/or house pursuant to 11 U.S.C. § 363. In the alternative, the Trustee asked the bankruptcy court, if it determined that the Debtors had transferred the value of the house to Lester Peterson by attaching it as a fixture to his real estate, to nullify the transfer as a fraudulent conveyance under Minnesota law.

On June 14, 1988, the Debtors filed amended schedules, claiming an interest in the house and an exemption under Minnesota homestead law. On July 14, 1988, the Debtors informed the Trustee that the time period for objecting to claimed exemptions, thirty days under Bankruptcy Rule 4003(b),[3] had passed without the Trustee having filed an objection. The Trustee responded the next day, stating that he did not file an objection because he believed the Debtors' claimed exemption was invalid under 11 U.S.C. § 522(g), which precludes a debtor from exempting property recovered after a voluntary transfer. On July 18, 1988, however, the Trustee did file an objection, thirty-four days after the claimed exemption had been filed.

The bankruptcy court subsequently struck the Trustee's objection as untimely. The bankruptcy court began by stating that the Debtors could not properly claim a homestead exemption because Minnesota law requires an exemptible homestead to be located on land the debtor owns. The bankruptcy court also stated that the Debtors' alleged license to the property underneath the house did not provide them with any equitable interest in the land. The court then characterized this discussion as superfluous, because the Trustee's failure to file his objection on time precluded any binding determination of the merits of the claimed exemption. In a related proceeding that same day, based on its earlier

---

**3.** Fed.R.Bankr. 4003(b) provides: "The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after

... the filing of any amendment to the list unless, within such period, further time is granted by the court."

decision, the bankruptcy court denied the Trustee's motion for summary judgment and *sua sponte* granted summary judgment for the Debtors, holding that their house was exempt and was not property of the bankruptcy estate. The bankruptcy court later denied the Trustee's motion for amended findings, rejecting his argument that the Debtors had actual notice of his objection by virtue of his letters and the adversary proceedings.

On appeal to the district court, the Trustee argued that he was not required to object to the claimed exemption because the exemption was invalid under state and federal law. The district court rejected this argument, characterizing it as a "substantive end-run around the procedural issue before this court." Joint App. at A–6. The district court refused to examine the merits of the claimed exemption, concluding that the court would not "rewrite Rule 4003(b) merely because it can have prejudicial effect." *Id.* at A–7.

The Trustee also argued that he was not required to object formally because his letters to the Debtors provided them with informal notice of his objection. The court held that there was insufficient evidence in the record to support the Trustee's claim that the Debtors had actual notice of his objection. The district court observed that the Debtors had notice that the house was an object of contention, but that they did not have notice that the Trustee objected to the homestead exemption. The district court noted that the Trustee initially had accused the Debtors of fraudulent conveyance, but had not argued that their house did not satisfy the Minnesota homestead exemption requirements. The court also pointed out that the Trustee himself had suggested that the Debtors assert an interest in the property and claim the homestead exemption. None of the Trustee's subsequent letters to the Debtors, the court concluded, contradicted his earlier suggestion. The district court held that Rule 4003 controlled and thus affirmed the bankruptcy court's orders. The Trustee now appeals the affirmance.

## II.

### A. Actual Notice

 The Trustee first argues that the district court erred in striking his objection as untimely because the Debtors had actual notice of the objection. In support of this argument, the Trustee relies primarily on *Young v. Adler (In re Young)*, 806 F.2d 1303 (5th Cir.1986). In *Young*, the trustee sued the debtor to recover payments that the debtor was receiving pursuant to an annuity contract. The debtor then amended his financial statement to claim the payments as exempt personal property. Forty-four days after the amendment, the trustee filed his objection to the claimed exemption. The debtor argued that Rule 4003(b) barred the trustee's objection as untimely. The Fifth Circuit disagreed. The court stated that the basic purpose of Rule 4003(b) was to ensure timely notice to debtors that the trustee objects to the claimed exemption. *Id.* at 1305. The *Young* court believed that the trustee's previously-filed suit served the same purpose, concluding that the trustee "levied his objections, thus effectively complying with the rule, prior to Debtor's amending of his statement." *Id.* The Trustee also relies on *Geekie v. Owen (In re Owen)*, 74 B.R. 697 (Bankr.C.D.Ill.1987), in which the bankruptcy court found that a suit filed challenging a homestead exemption served as effective notice of an objection. *Id.* at 698.

The Trustee contends that this case is indistinguishable from *Young* and *Owen*, and that his filing suit in May 1988 created the same sort of objection found effective in those cases. We disagree. The *Owen* decision is easily distinguishable on the ground that the complaint filed in that case expressly objected to the homestead exemption. *Id.* As the lower courts determined in this case, nowhere in the Trustee's complaint or his correspondence with the Debtors is there any mention of the claimed homestead exemption's invalidity under the relevant law. The *Young* decision is also distinguishable on similar

grounds.[4] Although the *Young* court did not discuss the details of the complaint, it observed that the debtor "surely cannot" contend that he lacked actual knowledge. *Young,* 806 F.2d at 1303. The logical implication of this statement is that there must have been something in the complaint that provided notice of the trustee's objection. As mentioned above, in this case, there is nothing in the Trustee's complaint or correspondence that would put the Debtors on notice that the Trustee objected to their claimed homestead exemption. Because notice is a factual question, *In re Excello Press, Inc.,* 890 F.2d 896, 903 (7th Cir.1989), we will not overturn the lower court's finding unless it is clearly erroneous. *Martin v. United States ex rel. Commodity Credit Corp. (In re Martin),* 761 F.2d 472, 474 (8th Cir.1985). Based on our review of the record, the notice finding is not clearly erroneous.

## B. Untimely Filed Objection

■ The Trustee next argues that the district court erred in striking his objection as untimely because the Debtors' claimed homestead exemption was invalid and thus there was no need to object. In support of this argument, the Trustee cites *In re Bennett,* 36 B.R. 893 (Bankr.W.D.Ky.1984). In *Bennett,* the debtor proffered the same argument the Debtors raise in this case, namely, that the plain language of 11 U.S.C. § 522(*l*)[5] mandates that if a trustee does not object to a claimed exemption within the relevant period, the exemption exists as a matter of law. The *Bennett* court rejected this argument, refusing to sanction the rule of "exemption by declara-

tion." *Id.* at 894. The *Bennett* court reasoned:

> The obvious result of such a rule would be to encourage a debtor's claim that *all* of his property is exempt, leaving it to the bankruptcy trustee and creditors to successfully challenge that claim. We would revert to the law of the streets, with bare possession constituting not nine, but ten, parts of the law; orderly administration of estates would be replaced by uncertainty and constant litigation if not outright anarchy.

*Id.* at 895 (emphasis in original). The Trustee argues in this case that the district court's striking of his objection creates just such an "exemption by declaration" and should be overruled.

Our review of the relevant case law reveals that courts have taken three approaches to analyzing whether a trustee's objection should be considered when it is not filed on time. One approach is that used by the bankruptcy court in this matter, namely, that if the objection is not filed on time, it is stricken and there is no examination of the merits of the exemption. *See, e.g., In re Bradlow,* 119 B.R. 330, 331 (Bankr.S.D.Fla.1990); *Barnes v. ITT Fin. Servs. (In re Barnes),* 117 B.R. 842, 845 (Bankr.D.Md.1990); *In re Duncan,* 107 B.R. 754, 757 (Bankr.W.D.Okla.1988); *In re Payton,* 73 B.R. 31, 33 (Bankr.W.D.Tex. 1987). Courts generally justify this approach by citing the "plain language of [Rule 4003] and § 522(*l*), together with the limitations, contained in Rule 9006, upon the court's ability to extend the time within which such objections could be filed," and the "need for a precise date as of which the rights of the various parties to a bankrupt-

---

4. Also, we do not find the *Young* court's reasoning entirely persuasive. The court correctly acknowledged that the primary purpose of Rule 4003(b) is to ensure timely notice of the trustee's objection to a claimed exemption. The result in *Young,* however, contradicts this stated purpose. Treating the previously-filed suit as an objection, before the exemption is even claimed, is questionable because under the plain language of Rule 4003(b), a trustee can only object to a *claimed* exemption. A better analysis is found in *In re Indvik,* 118 B.R. 993 (Bankr. N.D.Iowa 1990), where the court held that a trustee's previously-filed suit for turnover of un-

scheduled property did not constitute notice of an objection to a subsequently-claimed exemption. *Id.* at 1001. The *Indvik* court expressly declined to follow *Young* and *Owen,* stating that those decisions were too liberal in defining what constitutes an objection. *Id.*

5. 11 U.S.C. § 522(*l*) states in pertinent part: "The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section.... Unless a party in interest objects, the property claimed as exempt on such list is exempt."

cy proceeding can be established." *In re Hansen*, 101 B.R. 33, 35 (Bankr.N.D.Ind. 1988).

The second approach to analyzing whether a trustee's untimely filed objection should be considered is that urged by the Trustee in this case, namely, that an objection is not necessary if the debtor's claimed exemption is invalid under state or federal law. This approach requires courts to examine fully the merits of the claimed exemption. *See, e.g., Stutterheim v. First State Bank, Alemena (In re Stutterheim)*, 109 B.R. 1010, 1013 (D.Kan.1989); *In re Velis*, 109 B.R. 64, 65 (Bankr.D.N.J.1989); *Geekie v. Owen (In re Owen)*, 74 B.R. 697 (Bankr.C.D.Ill.1987). Courts employing this approach usually refer to the equitable considerations the *Bennett* court found persuasive. *E.g., Stutterheim*, 109 B.R. at 1012. As the bankruptcy court in *Owen* stated: "[T]he trustee's failure to file a formal objection within the time limits of Rule 4003(b) will not create a homestead exemption for a debtor not otherwise entitled to one under the exemption statutes." *Owen*, 74 B.R. at 699.

The third approach courts take when analyzing late objections to claimed exemptions is a middle-ground one, and involves determining whether the debtor had a good-faith statutory basis for the claimed exemption. *See, e.g., Taylor v. Freeland & Kronz (In re Davis)*, 118 B.R. 272, 275 (W.D.Pa.1990); *In re Indvik*, 118 B.R. 993, 1002 (Bankr.N.D.Iowa 1990); *In re Staniforth*, 116 B.R. 127, 130–31 (Bankr.W.D. Wis.1990); *In re Hahn*, 60 B.R. 69, 75 (Bankr.D.Minn.1985). This approach originated in *Munoz v. Dembs (In re Dembs)*, 757 F.2d 777 (6th Cir.1985), where the Sixth Circuit stated:

> The clear import of [Rule 4003(b)] and of section 522(*l*) is that objections to claimed exemptions must be made within thirty days after the creditors' meeting or any amendment, or they are waived.... *We do not mean by this to endorse "exemption by declaration"; there must be a good-faith statutory basis for exemption, .... But where the validity of an exemption is uncertain under existing law, ... the creditor*

> *cannot rest on his rights in the face of Rule 4003(b).*

*Id.* at 780 (emphasis added). This approach does not require a full-scale review of the claimed exemption, but only a determination of whether there is a good-faith statutory basis for it. For example, in *Bass v. Hill*, 79 B.R. 653 (W.D.Va.1987), the district court reversed a bankruptcy court's determination that the debtor's claimed exemption did not have a good-faith statutory basis where the exemption appeared valid under state law and state policy mandated the liberal application of homestead exemptions. *Id.* at 655–56.

We conclude that the third, middle-ground approach is the appropriate method for analyzing a trustee's untimely filed objection. Our choice does not result simply from Solomonic aspirations; rather, we believe that requiring a debtor to show a good-faith statutory basis for the claimed exemption avoids the difficulties inherent in "exemption by declaration" and best effectuates the policies underlying Rule 4003(b). Rule 4003(b) establishes a bright-line, thirty-day limit for objections to claimed exemptions. As noted above, this limit creates a certain date from which the various parties' rights and obligations may be ascertained. Moreover, the Bankruptcy Rules indicate that the thirty-day limit is important: Rule 9006(b)(3) explicitly prevents courts from enlarging 4003(b)'s time limit unless the trustee requests an extension within the original thirty-day period. *See also Clark v. Brayshaw (In re Brayshaw)*, 912 F.2d 1255, 1256–57 (10th Cir. 1990) (strictly construing 4003(b) to prohibit courts from granting extensions to file objections outside the thirty-day limit). To permit a full examination of the merits of a claimed exemption where the trustee has not filed an objection on time would render Rule 4003(b) nugatory. This bright-line rule, however, should not be applied so as to provide debtors with an undeserved windfall. The undesirable effects of "exemption by declaration" should be avoided.

The dangers of "exemption by declaration," however, are not significant enough to warrant permitting a trustee another

bite at the debtor's apple where the debtor has claimed certain property exempt in good faith. The Trustee has characterized the Debtors' claimed exemption in this case as an "extremely delinquent [attempt at] subterfuge." He apparently believes that there was something insidious about the Debtors amending their schedules almost two years after filing for bankruptcy. The Bankruptcy Rules, however, expressly permit such amendments: "A voluntary ... schedule ... may be amended by the debtor *as a matter of course at any time before the case is closed.*" Fed.R.Bankr. 1009(a) (emphasis added). The Debtors based their claimed exemption on Minn. Stat. § 510.01, which provides: "The house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process...." The bankruptcy court, in a discussion it conceded was superfluous, concluded that the Debtors' exemption was invalid because, although the Debtors owned and occupied the house, they did not own the land under it. The district court, on appeal, noted that although it agreed with the bankruptcy court's determination, the court would not address the issue as it was unnecessary to the resolution of the case. Because we hold today that debtors must show only a good-faith statutory basis for their claimed exemptions when a trustee files an untimely objection, we need not decide whether the Debtors' claimed exemption is valid, only whether it was made in good faith.

■ In reaching its conclusion that the Debtors' claimed exemption was invalid, the bankruptcy court seemed to indicate that the plain language of Minn.Stat. § 510.01 requires a debtor to own the land on which the house is situated. We do not reach the same conclusion. Clearly, the debtor must own and occupy the house, but the statute's reference to land only goes to the definition of the nature of the exempt homestead. The bankruptcy court cited only *Smith v. Lackor*, 12 Minn. 454 (1872),

in support of its conclusion. It did not discuss the strong Minnesota policy of liberally construing its homestead law. *See Northwestern Nat'l Bank v. Kroll*, 306 N.W.2d 104, 105 (Minn.1981); *Denzer v. Prendergast*, 126 N.W.2d 440, 444 (Minn. 1964). Nor did it mention those modern cases in which homestead exemptions were granted to individuals who did not own the land on which the house was located. *See, e.g., Cargill, Inc. v. Hedge*, 375 N.W.2d 477 (Minn.1985) (granting homestead exemption to individuals claiming exemption for property owned by their farming corporation); *In re Guardianship of Huesman*, 381 N.W.2d 73 (Minn.Ct.App.1986) (granting homestead exemption to brothers who worked on mother's farm). In this case, the Debtors constructed and occupied a house located on Lester Peterson's property. Given the liberal Minnesota homestead exemption policy and the unclear state law, we conclude that the Debtors had a good-faith statutory basis for their claimed exemption.

Further supporting our conclusion are the actions of the Trustee in this case. In light of his own actions, the Trustee's characterization of the Debtors' actions as spurious and deceptive is disingenuous at best. On September 30, 1986, the Trustee, a practicing bankruptcy lawyer, informed the Debtors they could avoid any problems with the house if they amended their schedules and claimed it as exempt homestead property. At this time the Trustee knew that the Debtors' house was located on Lester Peterson's land. When the Debtors did not amend their schedules, the Trustee sued to recover the house or its value under the federal bankruptcy laws. Subsequently, the Debtors claimed the exemption, and the Trustee did not object on time. The Trustee maintains that he did not file an objection on time because he believed the exemption was invalid. The record belies that contention, and reveals that, at best, the Trustee was unsure whether he should object. In a letter sent the same day he received notice of the Debtors' claimed household exemption, June 14, 1988, the Trustee wrote his attorney about

 

the need to object. The Trustee mentioned several theories on which he could base an objection. The Trustee concluded the letter: *"[I]t may be wise to object at this time to avoid facing this problem later."* In his July 15, 1988 response to the Debtors' letter informing him that the thirty-day limit had passed, the Trustee stated: "I do not feel the exemption is appropriate due to the prohibition contained in 11 U.S.C. § 522(g), (h) precluding the debtor from exempting property which is recovered after a voluntary transfer. In that this prohibition is inherent in the Bankruptcy Code, I felt no need to object to your exemption claim." Subsequently, in a May 18, 1989 reply affidavit, the Trustee acknowledged the contents of his June 14, 1988 letter, but added: *"For reasons unknown to the trustee,* a formal objection apparently was not timely filed within the thirty day time period." These inconsistencies, although not of primary importance in our analysis, support our ultimate conclusion that the Trustee's objection should be stricken.

We believe the "good-faith statutory basis" approach we adopt today best balances the equities present in situations where a bankruptcy trustee fails to object on time to a claimed exemption. Where a trustee fails to object on time, there will be no "exemption by declaration." The trustee, however, will not be permitted to challenge the merits of a claimed exemption—the bankruptcy court need only decide whether the debtor had a good-faith statutory basis for it. This places the burden of objecting to claimed exemptions where it belongs, on the trustee. If a claimed exemption lacks a good-faith statutory basis, the debtor will not receive an unjust windfall. But if it does, the trustee will not be rewarded for "rest[ing] on his rights in the face of Rule 4003(b)." *Dembs,* 757 F.2d at 780.

## III.

Because the district court's holding that the Debtors did not have actual notice was not clearly erroneous and the Debtors had a good-faith statutory basis for their claimed homestead exemption, the judgment of the district court is affirmed.