**In re R. Richard RISO, Debtor.**

**Bankruptcy No. 84–340–JEY.**

United States Bankruptcy Court,
D. New Hampshire.

Jan. 14, 1994.

Andrew M. Troop, Hutchins, Wheeler & Dittmar, Boston, MA, for debtor.

Victor Dahar, Trustee, Manchester, NH.

Geraldine Karonis, Asst. U.S. Trustee, Manchester, NH.

*Memorandum Opinion and Order*

JAMES E. YACOS, Chief Judge.

This chapter 7 case came on for hearing before the Court on January 22, 1993 on a Motion to Compel Trustee to Return Exempt Property, filed by the debtor on November 27, 1992. Debtor seeks the return of his Individual Retirement Account ("IRA"), plus interest, which debtor had claimed as exempt property and which had been appropriated by the Chapter 7 Trustee. For the reasons set forth below, the debtor's motion is grant-

ed and the Chapter 7 Trustee is directed to return the account monies plus all accumulated interest to the debtor.

### Chronology

On June 7, 1984, debtor filed for chapter 7 bankruptcy relief in Florida. The bankruptcy case was transferred to New Hampshire on August 27, 1984, and the Chapter 7 Trustee was appointed on September 4, 1984.

On September 20, 1984, debtor filed an "Amendment to Schedules of Assets and Liabilities", amending Schedule B–4, Property Claimed as Exempt, to include his retirement account as property exempt from the bankruptcy estate. Specifically, debtor listed the following property as exempt:

| Property | Statute | Amount |
| --- | --- | --- |
| * * * * * | | |
| b). Individual Retirement Account (IRA) on deposit at Pelham Bank & Trust, Windham, N.H. | Exemption claimed under Federal Law (ERISA, IRC § 401(a)(13); 29 U.S.C. 1056(d)(1). | $6,000.00 |
| * * * * * | | |

See Amendment to Schedules of Assets and Liabilities, p. 1 (filed September 20, 1984) [1]. Debtor's certificate of service attests that a copy of this amendment to his schedules was mailed to the Chapter 7 Trustee.

A meeting of all creditors was held pursuant to 11 U.S.C. § 341 on October 3, 1984. (This was actually a continued meeting of creditors because an initial § 341 meeting had been held in Florida on July 9, 1984, prior to the transfer of the case.) Almost two years later, on July 5, 1986, the trustee sent a letter to the Pelham Bank & Trust Company requesting the bank to send him "all funds currently on hand in Mr. Riso's accounts". See Trustee's Application for Fee, Itemization of Professional Services, p. 1 (filed Feb. 14, 1991). The trustee had not filed a written objection to debtor's claim of exemption of his retirement account or otherwise sought authorization from this Court to seize the debtor's funds. On July 19, 1986, the trustee received a letter from the bank "enclosing two checks totalling $5,132.22 representing the current value of Mr. Riso's two certificates on deposit IRA accounts". Id. at 2. The trustee deposited the monies received. Id.

On August 8, 1986, debtor's attorney sent a letter to the trustee requesting, in part, that the trustee return the IRA funds. See Motion to Compel Trustee to Return Exempt Property to the Debtor, Exhibit B, Letter to Dahar from Berman, Aug. 8, 1986 (filed Nov. 27, 1992). Debtor's attorney wrote, "The funds were taken without notice and in contravention of Riso's exemption which has not been contested." Id. Receiving no response, debtor's attorney sent another letter to the trustee on October 16, 1986 again requesting the return of the IRA funds. Id., Letter to Dahar from Berman, Oct. 16, 1986. The debtor's attorney wrote, "I ... believe you will agree with me that in accordance with Mr. Riso's claimed exemption and existing case law, the funds should be returned to him. The exemption has been claimed with no objection thereto having been made. It was and continues to be improper for you to have taken the funds." Id.

The trustee responded by letter dated November 5, 1986, stating, "My position is that the IRA funds are property of the estate.... Under state law the IRA account is not exempt." Id., Letter to Berman from Dahar, Nov. 5, 1986. Thereafter nothing further occurred with respect to the IRA funds until

---

1. Debtor's IRA account was originally comprised of three certificates of deposit, one for $1,000 and two for $2,000 each, for a total of $6,000. However, one of the CDs, in the amount of $1,173.58, was seized by a law enforcement officer on May 24, 1984, prior to debtor's filing for bankruptcy protection. See Motion to Compel Trustee to Return Exempt Property to the Debtor, pp. 2–3, fns. 1 and 2 (filed Nov. 27, 1992).

November 1, 1988, when debtor's attorney again sent a letter to the trustee, stating in part:

> "... [N]o objection to that exemption has ever been filed. I believe the law is clear that if you desire to contest an exemption, you must do so in a timely manner by filing an appropriate objection with the Bankruptcy Court.
>
> The IRA Account was established to provide for Mr. Riso's retirement and those funds are now needed for that purpose. I respectfully demand that you return the funds to Mr. Riso or file an appropriate objection with the Bankruptcy Court."

*Id., Letter from Berman to Dahar,* Nov. 1, 1988. The trustee sent a letter to debtor's attorney on January 3, 1989, writing, "I will give you a definite answer relative to this matter within the next ten to fifteen days." *Id., Letter from Dahar to Berman,* Jan. 3, 1989.

Nothing happened thereafter until after April 21, 1992, when the United States Supreme Court issued its decision in *Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), in which the Court declared that a chapter 7 trustee's failure to object to a claimed exemption within thirty days following the creditors' meeting renders the asset exempt regardless of whether the item in question would be determined to be legally exempt as a matter of substantive law had an objection been timely filed.

Debtor's attorney sent a letter to the trustee on May 8, 1992 referencing the *Taylor* decision and again requesting the return of the IRA funds, including interest. *See Motion to Compel Trustee to Return Exempt Property to the Debtor,* Exhibit B, *Letter to Dahar from Berman,* May 8, 1992 (filed Nov. 27, 1992). Debtor's attorney sent another letter to the trustee on June 24, 1992. *Id., Letter from Berman to Dahar,* June 24, 1992.

The trustee responded that he would not voluntarily turn the funds over and the debtor should seek a ruling from this court. *Id., Letter from Dahar to Berman,* July 8, 1992. The debtor then filed his "Motion to Compel Trustee to Return Exempt Property to the Debtor" on November 7, 1992, and the Court held a hearing on January 22, 1993, and directed briefing of the retroactive applicability of the *Taylor* decision. As it happens, however, the result is the same even if the *Taylor* decision is deemed non-retroactive, on the facts of this case, and the Court does not reach that issue.[2]

*Discussion*

■ When a debtor seeks relief from his debts under the Bankruptcy Code, all of his property becomes property of the estate. 11 U.S.C. § 541. However, debtors are allowed to retain certain property by claiming it as exempt. 11 U.S.C. § 522. Debtors are required to file a list of property that they claim as exempt from property of the bankruptcy estate, and "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(*l*). Any objections to debtor's list of property claimed as exempt must be filed "within 30 days after the conclusion of the meeting of creditors ... or the filing of any amendment to the list...." Bankruptcy Rule 4003(b); 11 U.S.C.A. § 522(*l*). The issue is whether a bankruptcy trustee's failure to timely object to a debtor's claim of exempt property results in the allowance of such claim of exemption, regardless of the merits of the claimed exemption.

As noted above, the Supreme Court in *Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) held that a trustee may not contest the validity of a claimed exemption after the Rule 4003(b) 30–day period has expired, even though the debtor had no colorable basis for claiming the exemption. Prior to the Supreme Court's decision in *Taylor* in 1992, there was

---

**2.** The Court, upon reflection and having reviewed the briefs submitted and the law, and in consideration of the complex and vexing nature of the retroactivity issue given the Supreme Court's somewhat shifting views on the retroactive application of its decisions, has decided this matter without reaching that issue by assuming, without deciding, that *Taylor* does not apply retroactively, as the trustee contends, because even in that situation the trustee will not prevail, as detailed below.

no clear law regarding the effect on a claimed exemption if there were no timely objections, and bankruptcy court decisions were in conflict in their analyses and rulings. *See* citation of cases in *In re Davis,* 105 B.R. 288, 292 (Bankr.W.D.Pa.1989), *aff'd* 118 B.R. 272 (W.D.Pa.1990), *rev'd,* 938 F.2d 420 (3rd Cir.1991), *aff'd sub nom. Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *see also In re Keenan,* 106 B.R. 239, 242 (Bankr.D.Col.1989) and *In re Montgomery,* 80 B.R. 385, 388–89 (Bankr. W.D.Tex.1987).

Generally, the lower courts took one of three approaches in determining whether the trustee's objection should nevertheless be considered, as discussed by the Eighth Circuit Court of Appeals in *In re Peterson,* 920 F.2d 1389, 122 B.R. [20] (8th Cir.1990):

1. "One approach is ... that if the objection is not filed on time, it is stricken and there is no examination of the merits of the exemption. Courts generally justify this approach by citing the 'plain language of {Rule 4003} and § 522(*l*), together with the limitations, contained in Rule 9006, upon the court's ability to extend the time within which such objections could be filed,' and the 'need for a precise date as of which the rights of various parties to a bankruptcy proceeding can be established.'"

2. "The second approach ... is ... that an objection is not necessary if the debtor's claimed exemption is invalid under state or federal law. This approach requires courts to examine fully the merits of the claimed exemption. Courts employing this approach usually refer to the equitable considerations the [*In re*] *Bennett* [36 B.R. 893 (Bankr.W.D.Ky. 1984)] court found persuasive. As the bankruptcy court in [*In re*] *Owen* [74 B.R. 697 (Bankr.C.D.Ill.1987)] stated: '{T}he trustee's failure to file a formal objection within the time limits of Rule 4003(b) will not create a homestead exemption for a debtor not otherwise enti-

tled to one under the exemption statutes.'"

3. "The third approach ... is a middle-ground one, and involves determining whether the debtor had a good-faith statutory basis for the claimed exemption.... This approach does not require a full-scale review of the claimed exemption, but only a determination of whether there is a good-faith statutory basis for it."

*In re Peterson,* 920 F.2d 1389, 1392–93, 122 B.R. [20] (8th Cir.1990) (citations omitted).

The majority of appellate courts that addressed this issue prior to *Taylor* adopted the third "middle-ground" approach. *See In re Coones,* 954 F.2d 596 (10th Cir.1992), *reh'g denied* (Feb. 14, 1992), *cert. granted and judgment vacated* —— U.S. ——, 113 S.Ct. 31, 121 L.Ed.2d 4 (1992), *motion for clarification denied* —— U.S. ——, 113 S.Ct. 402, 121 L.Ed.2d 328 (1992), *on remand* 996 F.2d 250 (10th Cir.1993), *cert. denied* —— U.S. ——, 114 S.Ct. 684, 126 L.Ed.2d 651 (1994); *In re Peterson,* 920 F.2d 1389, 1393–1394, 122 B.R. [20] (8th Cir.1990); *Matter of Sherk,* 918 F.2d 1170, 1174, 121 B.R. [46] (5th Cir. 1990); and *In re Dembs,* 757 F.2d 777, 780, 48 B.R. [14] (6th Cir.1985); *but see Taylor v. Freeland & Kronz,* 938 F.2d 420 (3rd Cir. 1991), *aff'd* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).[3] This is the most persuasive line of decisions and is the approach I would have adopted if I had addressed this question prior to the *Taylor* decision. The Sixth Circuit Court of Appeals defined and explained the "middle-ground" approach in *In re Dembs:*

> The clear import of [Rule 4003(b)] and of section 522(*l*) is that objections to claimed exemptions must be made within thirty days after the creditors' meeting or any amendment, or they are waived.... We do not mean by this to endorse "exemption by declaration"; there must be a good-faith statutory basis for exemption,.... But where the validity of an exemption is uncertain under existing law, ... the cred-

---

**3.** This issue had not been addressed by the First Circuit Court of Appeals, and the only bankruptcy court within this circuit faced with this issue also adopted the "middle-ground" approach. *See In re Kingsbury,* 124 B.R. 146 (Bankr.D.Me. 1991).

itor [or trustee] cannot rest on his rights in the face of Rule 4003(b).

*In re Dembs,* 757 F.2d 777, 780 (6th Cir.1985) (citations omitted). The logic and the legal basis for this "middle-ground" approach was given by the Fifth Circuit Court of Appeals in *Matter of Sherk,* 918 F.2d 1170 (5th Cir. 1990):

> "... Section 522($l$) contains an implicit 'additional requirement that there be a statutory basis for the claimed exemption....' [W]e ... are persuaded by the reference in § 522($l$) to the provisions of subsection (b) which limits exemptions to '... any property that is exempt under federal law ... or state law or local law that is applicable on the date of the filing of the petition.'"

*Id.* at 1174, *quoting In re Davis,* 105 B.R. 288, 292 (Bankr.W.D.Pa.1989), *aff'd* 118 B.R. 272 (W.D.Pa.1990), *rev'd,* 938 F.2d 420 (3rd Cir.1991), *aff'd sub nom. Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

Applying the "middle-ground" approach to this case, I find that the debtor's assertion in 1984 that his IRA account was exempt did have a colorable or good-faith basis in the law existing at that time. *See In re Damast,* 136 B.R. 11, 19 (Bankr.D.N.H.1991). In *Damast,* this Court first considered whether IRAs are exempt, and held that they are not, and pertinent to the issue herein I specifically observed that "The [*In re*] *Worthington* [28 B.R. 736 (Bankr.W.D.Ky.1983)] and [*In re*] *Cilek* [115 B.R. 974 (Bankr.W.D.Wis. 1990)] opinions demonstrate that a colorable argument can be made that IRAs conforming to Internal Revenue Code ("IRC") § 408(a) are similar enough to ERISA pension plans qualifying under IRC § 401(a) so as also to be exempt under section 522(b)(2)(A)." *Id.* Prior to my ruling in *Damast,* the law in this jurisdiction as to the exemptability of IRAs was unclear.

■ Due to the uncertainty of the law regarding the exemptibility of IRAs from "property of the estate" prior to my decision in *Damast,* the trustee had the burden to object to debtor's claim of exemption and obtain a ruling thereon. In this instance, the trustee not only failed to object, but also took almost two years to take any adverse action with respect to the property claimed as exempt. Prior to July or August of 1986, the debtor had no way of knowing that the trustee took issue with debtor's claim of exemption regarding the IRA funds. During that time the debtor was entitled to make his future plans (his "fresh start") on the assumption that his IRA account was exempt.

■ This opinion and order does not constitute a ruling on whether the trustee in fact has objected to debtor's claimed exemption, but even if this Court were to rule that the trustee's action in seizing the account monies was equivalent to an objection, the "objection" was untimely. Accordingly, notwithstanding this Court's 1991 ruling that IRAs are not exempt, the debtor's claim of exemption of his IRA funds herein is allowed by virtue of the trustee's failure to timely object and by virtue of the fact that debtor had a colorable claim of exemption of his IRA fund in 1984.

### Conclusion

■ In accordance with the foregoing, debtor's claim of exemption of his IRA fund is allowed, and the Chapter 7 Trustee is directed to return the fund monies, along with all interest accumulated thereon, to the debtor. Debtor's request for compound interest or other damages is denied inasmuch as the debtor had it in his power to precipitate this issue in 1986, at the time of the trustee's seizure of the account, but for whatever reason delayed until 1992 in taking any effective action.