# United States Bankruptcy Appellate Panel
## FOR THE EIGHT CIRCUIT

_____

No. 08-6033

_____

In re: James B. Grueneich,                        *
    As surety for JAG of Garfield, Inc.      *
        & Garfield Lumber,                *
    As surety for Garfield Homes, Inc,       *
    As surety for Jim Grueneich Land          *
        Company, Inc.,                    *
    As surety for JAG Land, LLC,              *
                            *   Appeal from the United States
       Debtor                             *   Bankruptcy Court for the
                            *   District of Minnesota
James B. Grueneich,                               *
                            *
       Debtor - Appellant                  *
                            *
           v.                              *
                            *
Gene W. Doeling, Trustee;                         *
Zajac Farm, Inc.,                                 *
                            *
       Objectors - Appellees               *

_____

Submitted: February 6, 2009
Filed: March 11, 2009

_____

Before FEDERMAN, MAHONEY, and VENTERS, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

**FACTUAL BACKGROUND**

Debtor James B. Grueneich filed a Chapter 7 bankruptcy case on March 21, 2007, and filed his original schedules on April 17, 2007. As relevant here, the original schedules listed several parcels of real estate on Schedule A, and he claimed two of them, neither of which was actually his homestead, fully exempt under 11 U.S.C. § 522(d)(1), the federal homestead exemption, in the amounts of $900 and $4,266. In addition, the Debtor's original Schedule B listed in Item 13: "Stock or membership units (100%) in Garfield Homes, Inc.; JAG of Garfield, Inc., d/b/a Garfield Lumber; JAG Land, LLC; Jim Grueneich Land Company, Inc.; JG Land Company, Inc. (North Dakota), all Minnesota entities except as otherwise indicated" (collectively, the "Stock") with a value of $0.00. The Debtor did not claim an exemption in the Stock on his original schedules.

The deadline to object to the exemptions was 30 days after the first meeting of creditors,[1] which was held on June 11, 2007, and no one objected by the deadline. The Debtor received his discharge on February 28, 2008.

On July 17, 2008, the Debtor filed amended schedules in which he changed the treatment of the Stock. As amended, Schedule B includes the following comment as to such Stock: "Corporate/LLC debt exceeds value of asset in all instances." As before, the amended schedules valued the Stock at $0.00. The Debtor also amended Schedule C to claim the Stock exempt under § 522(d)(5), the federal wildcard exemption, but he valued the Stock at $0.00 and claimed an exemption of $0.00.

---

[1] Fed. R. Bankr. P. 4003(b)(1).

In addition, he amended Schedule B to add in Item 35:

> Other personal property of any kind not already listed; Debtor(s) believe(s) that they/he/she have/has listed all of their/his/her property and that estimated values assigned to that property are correct, to the best of their/his/her knowledge, after reasonable inquiry. However, in the event that any property has been inadvertently omitted or in the event that the actual value of any property turns out to be greater than the stated [value], Debtor(s) hereby give(s) notice that they/he/she claim(s) any such inadvertently omitted property or excess value exempt up to the maximum amount allowed by applicable law.

He listed these purported assets with an "unknown" value. Schedule C was similarly amended to claim all of this omitted and/or undervalued property exempt under § 522(d)(5) in "unknown" amounts. As in the original schedules, the amended schedules claimed the homestead exemption as to the two parcels of real property. The Chapter 7 Trustee and Zajac Farm, Inc. objected to the amended exemptions. The Trustee claimed that the real estate was not the Debtor's homestead, and that the exemption in the Stock should be limited to the value claimed, or zero.

According to the Debtor, he made these amendments to the schedules because Zajac Farm or its principal, Ray Zajac, (collectively, "Zajac") offered to buy the Debtor's interest in all of the Stock from the estate for $2,500.[2] The Debtor asserted that Zajac's offer was not a true indication that the Stock had any value; rather, he asserted, Zajac's offer only reflects the amount of money Zajac is willing to pay to harass the Debtor.

The bankruptcy court scheduled a hearing on the objections to exemptions, at which the Trustee presented no evidence. Debtor's counsel stated a desire to present

---

[2] Apparently, Zajac later indicated to the Trustee that he might offer as much as $5,000 to buy the Stock if the Debtor attempted to claim the Stock exempt.

evidence as to the value of the Stock so as to show that the companies' liabilities exceeded their assets, and that he therefore acted in good faith in scheduling it with zero value. He was effectively denied the opportunity to do so. At the conclusion of that hearing, the bankruptcy court announced that it was sustaining the Trustee's objections, including the objection to the homesteads, suggesting that the Debtor was trying to "game the system" in claiming the exemptions. The court also indicated that it would not consider any further attempt by the Debtor to amend the exemptions. The court subsequently issued an Order memorializing the decision on the Trustee's objection,[3] holding that: (1) the exemption in the Stock was limited to $0; (2) the Trustee could sell the Stock and pay the Debtor $0 for his claimed exemption; (3) the catch-all unlisted/undervalued property exemption was disallowed; and (4) the exemption in the non-homestead real estate pursuant to § 522(d)(1) was disallowed. The Debtor appeals.

## STANDARD OF REVIEW

We review findings of fact for clear error, and legal conclusions *de novo*.[4] A finding of bad faith is reviewed for clear error, determined by an examination of the totality of the circumstances.[5]

---

[3] The bankruptcy court did not rule on Zajac's motion to deny the amended exemptions, and so our discussion here is limited to the merits of the Trustee's objection.

[4] *First Nat'l Bank of Olathe v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997); Fed. R. Bankr. P. 8013.

[5] *In re Kaelin*, 308 F.3d 885, 889 (8th Cir. 2002) (citation omitted).

**DISCUSSION**

A debtor's claimed exemptions are presumed to be valid, and an objecting party bears the burden of proving that a claimed exemption is invalid.[6] Moreover, "[t]he general rule allows liberal amendment of exemption claims," although a bankruptcy court has the discretion to deny an amendment to exemptions if the amendment is proposed in bad faith or would prejudice creditors.[7] In holding that the Debtor was "gaming the system," the bankruptcy court apparently determined that he was acting in bad faith in claiming these exemptions.

<u>The Homestead Exemptions</u>

Rule 4003(b) establishes a 30-day deadline from the initial meeting of creditors for objecting to exemptions.[8] In *Taylor v. Freeland & Kronz*, the Supreme Court held that a Chapter 7 trustee could not contest the validity of a claimed exemption after the 30-day objection period, where no extension had been obtained, even though the debtor had no colorable basis for claiming the exemption in the first place.[9] The filing of an amended schedule does not reopen the time to object to the original exemptions.[10]

---

[6] *See In re Alexander*, 270 B.R. 281, 286 (B.A.P. 8th Cir. 2001), *aff'd*, 44 Fed. Appx. 32 (2002); Fed. R. Bankr. P. 4003(c).

[7] *In re Kaelin*, 308 F.3d at 889.

[8] Fed. R. Bankr. P. 4003(b). We note that Rule 4003(b) was amended in 2008 to, *inter alia*, add a provision allowing a trustee to object to a claim of exemption at any time prior to one year after the closing of the case if the debtor fraudulently asserted the claim of exemption. Fed. R. Bankr. P. 4003(b)(2). However, that amendment to the rule was not in effect at the times relevant here.

[9] 503 U.S. 638, 643-44, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992).

[10] *See In re Kazi*, 985 F.2d 318, 323 (7th Cir. 1993) (*quoted by In re Shelby*, 232 B.R. 746, 750 n.1 (Bankr. W.D. Mo. 1999) (saying that it is "well established" that the filing of an

There is no dispute that the Trustee's objection as to the homestead exemptions was out of time. Nevertheless, he asserts that he is permitted to bring the untimely objection pursuant to 11 U.S.C. § 105[11] due to the Debtor's bad faith in twice asserting homestead exemptions under § 522(d)(1) for property that is concededly not his homestead.[12] As the Trustee suggests, the Supreme Court declined to consider in *Taylor* the question of whether a bankruptcy court may use § 105 as a basis for denying an exemption due to bad faith because the trustee there raised the argument for the first time on appeal.[13] However, even though the Supreme Court left open the § 105 question due to the procedural posture in that case, it is well-established that § 105 may not be used to circumvent a specific provision of the Bankruptcy Code or Rules.[14] The Code and Rules provide a clear and definite mechanism for objecting to

---

amended schedule does not reopen the time to object to the original exemptions)).

[11] Section 105 provides, in relevant part:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

[12] Although the Trustee never expressly mentioned §105 below or in its appeal brief as to his own objection, nor did the bankruptcy court expressly rely on that provision, the Trustee stated at oral argument in this appeal that that was the basis for his objection and the ruling.

[13] *Taylor v. Freeland & Kronz*, 503 U.S. at 645, 112 S.Ct. at 1649, 118 L.Ed.2d 280.

[14] *Raleigh v. Illinois Dep't. of Revenue*, 530 U.S. 15, 24-25, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) ("Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides."); *In re Olson*, 120 F.3d 98 (8th Cir. 1997) ("While the equitable powers emanating from § 105(a) are quite important in the general bankruptcy scheme, and while such powers may encourage courts to be innovative, and even original, these

exemptions, which the Trustee decided not to follow with regard to the homesteads.[15] Moreover, the trustee in *Taylor* made the same lack of good faith argument that the Trustee makes here and the Supreme Court plainly rejected it,[16] pointing out that when bad faith is involved, debtors and their attorneys face other penalties for engaging in improper conduct in bankruptcy proceedings, including § 727(a)(4)(B) (authorizing denial of discharge for presenting fraudulent claims); Rule 9011 (authorizing sanctions for signing certain documents not "well grounded in fact and . . warranted by existing law or a good faith argument for the extension, modification or reversal of existing law"); and 18 U.S.C. § 152 (imposing criminal penalties for fraud in bankruptcy cases).[17] The Supreme Court did not mention in this list § 105 as one of the alternative bases for belatedly remedying wrongfully claimed exemptions. It also made clear that deadlines such as the one found in Rule 4003(b) are to be enforced, even if they lead to unwelcome results, because they prompt parties to act and they produce finality.[18] Thus, even though the Supreme Court left open the question due to procedural issues, we question whether the Supreme Court would, in fact, permit

---

equitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules.") (citation omitted); *In re Scrivner*, 535 F.3d 1258 (10th Cir. 2008) ("Section 105(a) does not empower courts to create remedies and rights in derogation of the Bankruptcy Code and Rules.").

[15] Although not relevant to the timeliness issue, as discussed more fully below, the Trustee did not *neglect* to object to the original exemptions, he *decided not to* because he considered the erroneous exemption statute to be "immaterial," in part because the Debtor could have claimed the real property exempt under other statutory provisions.

[16] *In re Shelby*, 232 B.R. 746, 761 (Bankr. W.D. Mo. 1999) ("In *Taylor* the Supreme Court expressly rejected the position that had been adopted by the Eighth Circuit in *Halverson v. Peterson,* [920 F.2d 1389 (8th Cir. 1990)], that a debtor's claimed exemption will be disallowed despite the trustee's failure to timely object under Rule 4003(b), if the trustee is able to show that the debtor did not have a good-faith statutory basis for the claimed exemption.").

[17] 503 U.S. at 644-45, 112 S.Ct. at 1648-49, 118 L.Ed.2d 280.

[18] *Taylor*, 503 U.S. at 644, 112 S.Ct. at 1648, 118 L.Ed.2d 280.

a trustee to use § 105 to object to exemptions to which he declined or failed to properly object pursuant to the Rules.

Even if the Trustee is permitted to use § 105 for that purpose, he failed to establish grounds for doing so here. When questioned by the court at the hearing as to why he was objecting to the homestead exemptions a year after the Debtor initially claimed them, the Trustee responded that he did not originally object because the erroneous exemptions were "immaterial" at the time, apparently because the total value of property that the Debtor was claiming exempt was small and the properties would have been fully exempt under the proper Code section, § 522(d)(5), in any event. At the time of the original exemptions, the Trustee did not consider the claimed exemptions to be made in bad faith, despite the erroneous Code provision identified. Now, however, the Trustee attempts to couple the erroneous homestead exemptions with the Debtor's alleged bad faith in claiming exemptions in the Stock. As discussed below, however, we conclude that the bankruptcy court clearly erred in finding that the Debtor claimed the Stock exemptions in bad faith. As a result, there is no evidence to support a finding that the homesteads were claimed in bad faith. Instead, the Debtor simply claimed an exemption in real property to which he would have been entitled, but claimed it under subparagraph (1) of § 522(d), rather than subparagraph (5).

### The Stock Exemption

Section 522(d)(5), the federal "wildcard" exemption, permits a debtor to exempt "[t]he debtor's aggregate interest in any property, not to exceed in value $1075 plus up to $10,125 of any unused amount of the exemption provided under paragraph (1) of this subsection."[19] Paragraph (1), the federal homestead exemption, permits a debtor to exempt $20,200 in a homestead. The Debtor claimed a total of $5,166

---

[19] 11 U.S.C. § 522(d)(5).

exempt under the homestead exemption. In his amended schedules, he claimed the Stock exempt under the wildcard in the amount of $0.00 and claimed the broad catch-all described above exempt under the wildcard in an "unknown" amount. The Trustee asserts that the Debtor is not entitled to the Stock exemption because of his bad faith in claiming the exemptions in this manner. Again, as the party objecting to the exemptions, the Trustee bears the burden of showing bad faith.

Bad faith can form the basis for sustaining a timely objection to exemptions: in *In re Soost*, we limited a debtor's homestead exemption to $1.00 when the debtor knowingly understated the value of the property and claimed a $1.00 exemption in it.[20] However, recognizing the difficulty in valuing certain types of assets and claiming exemptions in such assets with unknown values, the Eighth Circuit has held that claiming an asset with an "unknown" value exempt in an "unknown" amount exempts the property up to the amount allowed by the applicable exemption(s).[21] The relevant questions in these situations are the debtor's intent in claiming the exemption in the manner done, and whether anyone was misled by the manner of claiming the exemption.[22]

The Debtor concedes, and we agree, that his catch-all exemption in the amended schedules was overly broad because it appeared to exempt unlisted assets. However, in this instance, the Debtor was in an unusual and difficult situation with regard to valuing and exempting the Stock. The Debtor could have assigned an "unknown" value to it, and claimed an "unknown" exemption in it, which, under *Wick*, would

---

[20] *In re Soost*, 262 B.R. 68 (B.A.P. 8th Cir. 2001).

[21] *In re Wick*, 276 F.3d 412 (8th Cir. 2002).

[22] *See In re Smith*, 2004 WL 41401 (Bankr. W.D. Mo. 2004) (holding that since the trustee was not misled by the debtor's "$0.00" exemption in a personal injury lawsuit with an "unknown" value – *i.e.,* the trustee interpreted the debtor's "$0.00" exemption to mean "unknown" – then under *Taylor* and *Wick,* the debtors could claim the personal injury lawsuit proceeds up to the maximum allowed by the exemption laws at the time).

9

have entitled him to an exemption up to the maximum allowed by the federal wildcard. However, the unrefuted evidence here was that the Debtor believed when he filed his schedules, and still believes, that the Stock is worthless. As the Debtor concedes, an offer to purchase an asset would normally constitute strong evidence of the asset's value, even if there is only one such offer made. In such a situation, Rule 1009 expressly permits a debtor to amend schedules "as a matter of course at any time before the case is closed,"[23] such that a debtor in this situation could amend to increase his exemptions based on the offer(s) received, up to the maximum exemption allowed under the applicable law, presuming that he is not otherwise acting in bad faith.[24] However, the Debtor asserts that his evidence would have shown that his companies' liabilities exceeded their assets, and that Zajac's offer, as evidence of value, is refuted by his motivation in making the offer. However, the Debtor was not given the opportunity to present that evidence at the hearing.

Moreover, the Trustee, who bore the burden of proving that the Debtor's valuing the Stock at zero on his schedules was both incorrect and intended to mislead, offered no such evidence, other than the Zajac offer itself. Nor did the Trustee demonstrate that anyone was, in fact, misled by the schedules. Rather, the evidence was that, in amending his schedules, the Debtor was attempting to do what the Eighth Circuit permitted in *Wick*, namely, to claim the Stock exempt to the maximum

---

[23] Fed. R. Bankr. P. 1009. *See also In re Blaise*, 116 B.R. 398, 400 (Bankr. D. Vt. 1990) ("Rule 1009 liberally entitles a debtor to amend at any time before the case is closed. The language of Rule 4003 also clearly supports a debtor's right to amend in providing the time frame within which one may object to an amended exemption list.").

[24] *In re Ladd*, 450 F.3d 751 (8th Cir. 2006) (holding that "the two recognized exceptions to the rule allowing liberal amendment under Rule 1009 are bad faith on the part of the debtor and prejudice to the creditor," but concluding that the bankruptcy court abused its discretion in not allowing an amendment because there were no allegations of bad faith). *See also In re Arnold*, 252 B.R. 778, 784 (B.A.P. 9th Cir. 2000) ("Amendments are and should be liberally allowed at any time *absent a showing of bad faith or prejudice.*") (citation omitted, emphasis added).

permitted when he believed the Stock was valued at zero. As a result, the bankruptcy court clearly erred in finding that the Trustee met his burden of proving that the Stock exemption was claimed in bad faith.

<u>The Homestead and Stock Exemptions As a Whole</u>

Although he did not object to the incorrect homestead exemptions in the original schedules, the Trustee points to the amended homestead and Stock exemptions considered in combination as evidence of bad faith. Had the Debtor properly claimed the real property exempt under the wildcard, then he would have $6,034 available for the Stock; claiming the real property exempt under the homestead leaves the Debtor with an $11,200 wildcard to use on the Stock.

Again, the Trustee offered no evidence of the Debtor's intent, other than the schedules themselves. According to Debtor's counsel, he intended all along to claim the two parcels of real property exempt under the wildcard, but simply listed the wrong Code provision in both the original and amended schedules. This is supported by the fact that, when the original schedules were filed, there had been no offer for the Stock and the entire wildcard went unused. As a result, the Debtor did not benefit in any way by claiming the real estate under the wrong statute, which is why the Trustee would have had not reason to object at that time. Similarly, when the amended schedules were filed, Zajac's offer for the Stock was $2,500, and the Debtor had ample room to claim both the real estate and the Stock exempt under the wildcard. Again, the Debtor received no benefit from claiming the real estate exempt under the wrong statute, and this continues to be true even if Zajac's offer increases to $5,000 (or even $6,034). Since there was no benefit to the Debtor in claiming the property exempt under the homestead statute, and the Trustee offered no additional evidence as to his intent in doing so, we conclude that the bankruptcy court erred in finding bad faith.

11

## The Sale of the Stock

The Debtor argues that, the exemptions notwithstanding, the Trustee should not be permitted to sell the Stock to Zajac because of Zajac's motivation. While we do not foreclose the possibility that a prospective purchaser's motivation may be relevant under certain circumstances, the Debtor has pointed to no real adverse consequences to himself or anyone else (other than the possibility that he might be required to make copies of records, discussed below) which would result if the Trustee sold the Stock to Zajac. Even assuming that the Debtor's evidence, had he been permitted to introduce it, would have shown that his companies' liabilities exceeded their assets, the fact is that the companies' Stock is worth something to Zajac. Typically, a trustee will not sell an estate asset for a price that will not bring in funds for creditors after the debtor's exemption. However, if a Trustee can produce funds for unsecured creditors, he has a duty to do so. Consequently, we decline the Debtor's request that the Trustee be precluded outright from selling the Stock to Zajac.[25]

## **CONCLUSION**

We hold that since the Trustee did not timely object to the homestead exemptions claimed by the Debtor, the bankruptcy court erred in sustaining his later objection to such exemptions. We also hold that the bankruptcy court clearly erred in finding that the Trustee met his burden of proving that the Debtor claimed his exemptions in bad faith. Therefore, the Order disallowing the Debtor's exemptions in the real estate and Stock is reversed. In the event of a sale of the stock by the Trustee, the Debtor is entitled to receive up to $11,000 of the proceeds pursuant to his allowed wildcard exemption.

---

[25] At oral argument, Debtor's counsel also requested that, if the Trustee is permitted to sell the Stock to Zajac, Zajac bear the cost of copying the companies' records. As the bankruptcy court pointed out, however, that is an issue to be raised if, and when, a motion to sell the Stock is made.