In re Laurence R. NICHOLSON and Joyce V. Nicholson, Debtors.

Karen Tyner; Applied Science, Inc., Appellants,

v.

Laurence R. Nicholson; Joyce V. Nicholson, Appellees.

BAP No. EC–09–1356–KwPaJu. No. 09–24547.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued May 18, 2010.

Submitted June 29, 2010.

Original Opinion Filed July 16, 2010.

Amended Opinion Filed July 29, 2010.

Meredith Edelman, Los Angeles, CA, for Karen Tyner; Applied Science, Inc.

Kenrick Young, Law Offices of Kenrick Young, Sacramento, CA, for Laurence and Joyce Nicholson.

Before: KWAN [1], PAPPAS and JURY, Bankruptcy Judges.

## AMENDED OPINION

KWAN, Bankruptcy Judge.

Chapter 7 debtors, Laurence R. Nicholson and Joyce V. Nicholson amended their bankruptcy schedules to claim an exemption in shares of stock in Applied Science, Inc. ("ASI"). The trustee objected to the amendment on the ground that the debtors had claimed the exemption in bad faith. Karen Tyner, who had joined in the trustee's objection, and ASI appeal the bankruptcy court's order overruling the objection and denying the appellants' request for an evidentiary hearing.[2] We hold that the bankruptcy court did not abuse its discretion by not conducting an evidentiary hearing. We VACATE the bankruptcy court's order, however, and REMAND for further proceedings, because the bankruptcy court required the appellants to prove bad faith by the incorrect standard of "clear and convincing evidence."

### I. FACTS

**A. The Debtors' Claim of Exemption and the Trustee's Sale of the ASI Stock**

Laurence R. Nicholson and Cliff Tyner were 50/50 owners of ASI, which manufactures whole blood collection devices for blood donation centers. In January 2009,

---

1. Hon. Robert N. Kwan, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Karen Tyner asserts that she and ASI are creditors in this bankruptcy case. The parties do not dispute this assertion on appeal.

Cliff Tyner passed away, and his widow, Karen Tyner, became executor of his estate, inherited his interest in ASI, and became chairperson of ASI's board of directors. At that time, ASI's revenues had been falling since 2005 and it had more liabilities than assets.

On March 16, 2009, the debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code.[3] On Schedule B (Personal Property) of the petition, the debtors listed the value of their 25 shares in ASI (50% ownership) as $0.00, described the asset as "worthless" and commented that the company had more liabilities ($860,726) than assets ($468,711). The debtors did not claim the shares as exempt property on Schedule C (Property Claimed as Exempt) of the petition. At the § 341(a) meeting of creditors, Nicholson testified that the shares had "no value" because "the corporation owes a considerable amount of money." One day after concluding the meeting of creditors, the chapter 7 trustee, Thomas A. Aceituno, filed a report of no distribution in the case. Tyner filed an objection to the no distribution report, asserting that Nicholson was commissioning an appraisal of ASI and that the shares may have value. The trustee then withdrew the report.

On July 28, 2009, the trustee filed a motion seeking the bankruptcy court's approval of a sale of the shares free and clear of liens to Tyner, subject to overbids, for $5,000. On the same day, the debtors amended their bankruptcy schedules to list the value of their ASI shares as $19,949 and to claim the entire amount as exempt under California Code of Civil Procedure ("CCP") § 703.140(b)(5). Three days later, on July 31, 2009, the debtors again amended their schedules to list the value

of shares as $0.00, but increased the amount of the exemption in the shares to $22,024 (by adding the amount of $2,075 as exempt under CCP § 703.140(b)(6)). On August 4, 2009, the debtors filed an objection to the proposed sale of the shares, asserting that the initial bid of $5,000 must be increased by the amount of their claimed exemption of $22,024.

On August 19, 2009, the bankruptcy court approved the trustee's proposed sale of the shares for $25,949, free and clear of liens, to Rostrevor Partners, LLC, the successful overbidder at the sale hearing. The sale order provided that the trustee was to hold a portion of the sale proceeds totaling $19,949, the amount of the exemption claimed by the debtors, in a separate account until the trustee's objection to the exemption was resolved. On August 20, 2009, ASI appointed Rostrevor Partners' managing member as its president and CEO and terminated Nicholson's employment.

## B. The Trustee's Objection to the Debtors' Claim of Exemption

On August 12, 2009, the trustee filed a timely objection to the debtors' claim of exemption in the shares. He contended that "[t]he amendment was obviously filed as a result of the offer to acquire the stock which I had arranged despite the Debtors' repeated representations that the Stock was 'worthless.'" Tyner joined in the trustee's objection, asserting that the debtors had claimed the exemption in bad faith.

On August 17, 2009, the debtors amended their schedules for the third time, listing the value of the shares as $25,000 on Schedule B, but eliminating the additional

---

3. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

$2,075 they had claimed as exempt on Schedule C.

On September 16, 2009, the debtors filed an opposition to the trustee's objection to their claim of exemption, contending that they had honestly claimed that ASI had no value when they filed the petition. The debtors argued that the company's sales had dramatically increased in late June and early July 2009 due primarily to Nicholson's sales efforts, and particularly from his developing relationship with Pall Medical, a large medical company. The debtors did not serve their opposition to the trustee's objection on Tyner or her counsel.

In her reply to the debtors' opposition, filed on September 25, 2009, Tyner asserted that Nicholson knew of Pall Medical's interest in ASI no later than April 2009. At that time, she contended, Nicholson made an offer to purchase her shares while commissioning a "bogus" no-value appraisal to support his claim that they were worthless. She also asserted that Nicholson delayed finalizing a deal with Pall Medical to avoid having to disclose the negotiations in the bankruptcy case.

In support of her reply, Tyner submitted an unsigned document, dated April 27, 2009, that appeared to be an offer from ASI to purchase Tyner's shares based on mandatory buyout provisions in Cliff Tyner's employment agreement with ASI for: (a) $250; (b) 4% of ASI's total sales of the "HemoFlow 200/300/400" devices through March 31, 2012 to the extent that new product sales totaled at least $25,000 per month; (c) accord and satisfaction of an alleged overpayment of income draws from ASI to Cliff Tyner vis-à-vis Nicholson; and (d) ASI's promise to use its best efforts to reduce any offsets of the buyout amount from Cliff Tyner's personal guarantees of ASI's debts. The document stated that ASI was currently "under water" in value, but that "a distribution agreement has been proposed with Pall Medical" and that "[i]f Pall is interested, some form of buyout may be negotiated between ASI and Pall."

Tyner also submitted a sheet of typewritten notes ("Notes"), which Nicholson purportedly wrote around July 3, 2009 after a discussion with his attorney and which was allegedly discovered among ASI's files. The Notes stated:

> Play [Tyner's] objection low.... Do not push Tyner[ ] to withdraw [it], as this may constitute [bankruptcy] fraud. If we know that the present value of the shares is worth something, ... then the court may say we conspired to conceal the value that the trustee should have known. Quiet is the word.... Obtain [a] short 1 page valuation (in the works) and submit [it] to [the][t]rustee and Tyner[ ].... Shows that value is in my knowledge, not the company. Too much information may cause the trustee to dig deeper and find out about the Pall discussions.... We cannot negotiate any deal with Pall until after the August 5 hearing, and we cannot close the deal until after September 16.

A single handwritten word, "CONFIDENTIAL," appeared on the Notes. Tyner attempted to prove the handwriting was Nicholson's by attaching a series of signed checks for purposes of comparison. She did not, however, submit a declaration to authenticate the Notes or the checks.

On September 30, 2009, the bankruptcy court held a hearing on the trustee's objection to the debtor's claim of exemption. At the hearing, the debtors objected to the Notes as inadmissible because the document lacked foundation. Tyner, through her counsel, contended that she did not submit a declaration to authenticate the Notes because the debtors did not serve her with the opposition and because she

expected to be able to cross-examine Nicholson at the hearing as to whether he wrote the Notes. The bankruptcy court denied Tyner's request to cross-examine Nicholson, ruling that it could not hold an evidentiary hearing because she had not filed the required notice that the parties disputed a material fact. The bankruptcy court also ruled, however, that the parties could file supplemental evidence and that it would then take the matter under submission.

The trustee timely filed supplemental evidence. Some of this evidence appears to link the Notes to Nicholson in several ways. Other evidence suggested that ASI had begun to develop a relationship with Pall Medical as early as April. The trustee submitted a printout of an e-mail allegedly from Nicholson to Pall Medical, dated March 6, 2009, in which Nicholson purportedly "propose[d] that Pall become the ASI sales representative in Europe and for the American Red Cross" because he had "just found out that there will be a large tender issued in Europe in early April." The evidence also contained an unsigned document, dated April 2, 2009, that apparently explored issues in establishing a distribution relationship between both companies.

As part of their supplemental evidence, the debtors submitted an appraisal of ASI, which valued the company as "$0 (Zero)" as of March 31, 2009. The appraiser based this valuation on a combination of a negative total average adjusted net income over the last three years and total net assets of negative $502,923. The appellants did not contest this appraisal.

## C. The Bankruptcy Court's Ruling

On October 22, 2009, the bankruptcy court filed an order overruling the trustee's objection to the debtors' exemption. In its memorandum decision filed the same day, the bankruptcy court, citing *Martinson v. Michael (In re Michael)*, 163 F.3d 526, 529 (9th Cir.1998), stated that it would overrule the objection based on its finding that the appellants had failed to present "clear and convincing" evidence that the debtors had acted in bad faith in claiming the exemption in the shares.

The bankruptcy court concluded that the debtors were honest in initially claiming that the shares had no value. The bankruptcy court observed that Nicholson's communications with Pall Medical in March and April 2009 were "preliminary negotiations" that did "not make for a valuable contractual right." The bankruptcy court also stated that the April 27, 2009 buyout proposal for Cliff Tyner's shares "reflected the speculative nature of the Pall Medical relationship" because it only provided for a nominal initial payment, which was to be augmented by a percentage of ASI sales payable only if a sales threshold of $25,000 per month was met.

The bankruptcy court gave "little evidentiary weight" to the Notes, finding that Tyner had not laid a sufficient foundation for the admission of the document. The bankruptcy court also concluded that, even if the document was genuine, it did not prove bad faith. "At most," the bankruptcy court stated, "the document reflects Nicholson's belief that ASI had value and his desire that the trustee not learn of the Pall Medical discussions." The bankruptcy court further stated that if Nicholson had written the document, he would have done so on or around July 3, 2009, which would have "reveal[ed] nothing about debtors' assessment of ASI's value on March 16, 2009, but rather [was] consistent with [his] testimony that ASI's prospects improved in late June [2009]." Also observing that "[t]he bad faith exception to Rule 1009(a) regulates bad-faith acts, not thoughts," the bankruptcy court noted that

the debtors had first amended their schedules in July 2009 to reflect this change in value only after ASI's prospects improved in June 2009.

Finally, the bankruptcy court rejected the trustee's assertion that the debtors had claimed an exemption in the shares to prevent their sale. The bankruptcy court reasoned that mere delay in claiming exemptions does not prove bad faith, and that "once the debtors realized the shares had value, they had every right to use their exemption claims in an attempt to capture that value."

ASI and Tyner timely appealed the. bankruptcy court's order. After hearing oral arguments on appeal, we ordered the parties to submit additional briefing on whether the bankruptcy court applied the correct burden of proof to the trustee's objection.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). We have jurisdiction under 28 U.S.C. § 158(a).

## III. ISSUES

A. Whether the bankruptcy court applied the correct burden of proof to the trustee's objection to the debtors' claim of exemption.

B. Whether the bankruptcy court's factual findings in overruling the trustee's objection were clearly erroneous.

C. Whether the bankruptcy court abused its discretion by not conducting an evidentiary hearing.

## IV. STANDARD OF REVIEW

A. We review, de novo, whether the bankruptcy court applied the correct burden of proof to the trustee's objection. *See Molski v. Foley Estates Vineyard and*

*Winery, LLC,* 531 F.3d 1043, 1046 (9th Cir.2008)(trial court's allocation of the burden of proof is reviewed de novo). De novo review means considering the matter "anew, as if no decision had been rendered below." *United States v. Silverman,* 861 F.2d 571, 576 (9th Cir.1988).

B. We review the bankruptcy court's factual findings in overruling the trustee's objection for clear error. *See Arnold v. Gill (In re Arnold),* 252 B.R. 778, 784 (9th Cir. BAP 2000) ("[T]he issue of a debtor's intent [in claiming exemptions] is a question of fact reviewed under the clearly erroneous standard.").

C. We review the bankruptcy court's decision not to conduct an evidentiary hearing for abuse of discretion. *See Khachikyan v. Hahn (In re Khachikyan),* 335 B.R. 121, 128 (9th Cir. BAP 2005). In applying an abuse of discretion test, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson,* 585 F.3d 1247, 1262 (9th Cir.2009). If the bankruptcy court identified the correct legal rule, the court abused its discretion if its "application of the correct legal standard [to the facts] was (1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" *Id.,* (quoting *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 577, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

## V. DISCUSSION

"When a debtor files a Chapter 7 bankruptcy petition, all of the debtor's assets become property of the bankruptcy estate, see 11 U.S.C. § 541, subject to the debtor's right to reclaim certain property as 'exempt,' § 522(*l*)." *Schwab v. Reilly,* — U.S. ——, 130 S.Ct. 2652, 2656–58, 177 L.Ed.2d 234 (2010). "The Bankruptcy

Code specifies the types of property debtors may exempt, § 522(b), as well as the maximum value of the exemptions a debtor may claim in certain assets, § 522(d)." *Id.* "Section 522(b) allow[s a debtor] to choose the exemptions afforded by state law or the federal exemptions listed in § 522(d)." *Taylor v. Freeland & Kronz,* 503 U.S. 638, 642, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). "Section 522(*l*) states the procedure for claiming exemptions and objecting to claimed exemptions as follows: 'The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section ... Unless a party in interest objects, the property claimed as exempt on such list is exempt.'" *Id.*

■ Here, the chapter 7 trustee objected to the debtors' amendment of the schedules claiming an exemption on the ground of bad faith. Federal Rule of Bankruptcy Procedure 1009(a) provides: "A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." Fed. R. Bankr.P. 1009(a). "No court approval is required for an amendment, which is liberally allowed." *In re Michael,* 163 F.3d at 529, *citing In re Doan,* 672 F.2d 831, 833 (11th Cir.1982). "Whether [debtors may] amend their schedules post-petition," however, "is separate from the question whether the exemption [itself is] allowable." *Id., citing In re Sandoval,* 103 F.3d 20, 22 (5th Cir. 1997).

■ We reject the debtors' argument that bankruptcy courts have no authority to disallow exemptions claimed in bad faith. Section 522(*l*) of the Bankruptcy Code and Rule 4003(b) of the Federal Rules of Bankruptcy Procedure permit a party in interest to object to a debtor's claim of exemption. Further, the Supreme Court has recognized the "broad authority granted to bankruptcy judges,"

pursuant to § 105(a) of the Bankruptcy Code, "to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 374–75, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007); see also *Latman v. Burdette,* 366 F.3d 774, 784–86 (9th Cir.2004)(recognizing inherent powers of bankruptcy courts to equitably surcharge a debtor's exemption to protect integrity of the bankruptcy process and to ensure debtor does not exempt amount greater than allowed under Bankruptcy Code despite lack of express Code provision for equitable surcharge of exemptions). In *Andermahr v. Barrus (In re Andermahr),* the panel adopted the rule of the Eleventh Circuit in *In re Doan* that a bankruptcy court may disallow a claim of exemption on a showing of "bad faith by the debtor or prejudice to creditors." 30 B.R. 532, 533 (9th Cir.BAP 1983), *citing In re Doan,* 672 F.2d at 833. The Ninth Circuit also adopted the rule stated in *Doan. See In re Michael,* 163 F.3d at 529, *citing In re Doan,* 672 F.2d at 833.

## A. The Bankruptcy Court did not Apply the Correct Burden of Proof to the Trustee's Objection.

■ Rule 4003(c) of the Federal Rules of Bankruptcy Procedure provides that, if a party in interest timely objects, "the objecting party has the burden of proving that the exemptions are not properly claimed." An exemption is "presumptively valid" and the objecting party, therefore, has the burden of producing enough evidence to rebut that presumption. *Carter v. Anderson (In re Carter),* 182 F.3d 1027, 1029 n. 3 (9th Cir.1999). Even if this burden is met, the burden of persuasion remains on the objecting party. *Id.*

The Bankruptcy Code and Bankruptcy Rules do not indicate what is the appropriate burden of persuasion for disallowing a claim of exemption. The Ninth Circuit has not defined this burden. The panel has, outside of the bad faith context, applied the ordinary "preponderance of the evidence" standard. *See Kelley v. Locke (In re Kelley)*, 300 B.R. 11, 16–17 (9th Cir. BAP 2003). "Proof by the preponderance of the evidence means that it is sufficient to persuade the finder of fact that the proposition is more likely true than not." *United States v. Arnold & Baker Farms (In re Arnold & Baker Farms)*, 177 B.R. 648, 654 (9th Cir. BAP 1994).

The debtors argue that "clear and convincing" evidence of bad faith is necessary to disallow a claim of exemption on that basis. "Clear and convincing evidence is a higher standard requiring a high probability of success." *Id.* The debtors make several arguments in support of this position.

First, the debtors argue that the panel adopted the "clear and convincing" standard for resolving objections to exemptions for bad faith in *Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253 (9th Cir. BAP 1988), and that the Ninth Circuit, by citing *Magallanes* in *Martinson v. Michael (In re Michael)*, 163 F.3d 526 (9th Cir.1998), did the same. Therefore, they argue, the bankruptcy court correctly relied on *Michael* in applying this standard. Each of these contentions is incorrect.

In *Magallanes*, the panel stated that "bad faith must be established by clear and convincing evidence." 96 B.R. at 256. The panel reasoned that "[t]his standard allows the party alleging bad faith an opportunity to prove his or her claim, but also implements the policy of liberally allowing the debtors to amend their exemption claims in order to enhance their fresh start." *Id., citing Brown v. Sachs (In re Brown)*, 56 B.R. 954, 958 (Bankr. E.D.Mich.1986). This discussion, however, was dicta because it was "not necessary to the decision and thus [has] no binding or precedential impact in the present case." *Export Group v. Reef Industries, Inc.*, 54 F.3d 1466, 1471–72 (9th Cir.1995), *citing inter alia Black's Law Dictionary* 454 (6th ed.1990)(defining "dictum" as "an observation or remark ... not necessarily involved in the case or essential to its determination") and *Wainwright v. Witt*, 469 U.S. 412, 422, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). The discussion was not essential to the panel's decision in *Magallanes* because it did not review whether the bankruptcy court applied the correct burden of proof. Instead, the panel held that the bankruptcy court had not made a factual determination as to the appropriateness of the amended schedules when the bankruptcy court disallowed the debtor's amended claim of a homestead exemption because of its prior order disallowing his original exemptions for his failure to appear at a scheduled trial. *In re Magallanes*, 96 B.R. at 256. Therefore, the panel remanded for the bankruptcy court to make factual findings on whether the debtor had claimed the exemption in bad faith. *Id.*

The Ninth Circuit's discussion of the issue in *Michael* was also dicta. In *Michael*, the Ninth Circuit affirmed the panel's reversal of the bankruptcy court's holding that the debtors could not amend their bankruptcy schedules to claim a homestead exemption more than a year after the petition date. 163 F.3d at 528–29. Citing the panel's opinion in *Magallanes*, the Ninth Circuit observed that the trustee had not objected to the amendment for bad faith. *Id.* at 529. Because of this, neither the Ninth Circuit nor the panel had an opportunity in *Michael* to reach the

issue of whether the bankruptcy court had applied the correct burden of proof.

After *Michael,* the panel in *Arnold* observed that "[i]t is not entirely clear whether bad faith or prejudice [in claiming exemptions] must be shown by a 'preponderance of the evidence' or 'clear and convincing' evidence." 252 B.R. at 784.[4] The panel in *Arnold* suggested that the Supreme Court may have answered this question in *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). *Id.* In *Grogan,* the Supreme Court held that a party in interest must prove, by a "preponderance of the evidence," that a debt should be excepted from discharge under 11 U.S.C. § 523. 498 U.S. at 291, 111 S.Ct. 654. Finding that the statute and its legislative history did not indicate the appropriate burden of proof, the Court stated that "[t]his silence is inconsistent with the view that Congress intended to require a special, heightened standard of proof." *Id.* at 286, 111 S.Ct. 654. "Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants," the Court continued, "we presume that this standard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake.'" *Id.* (citation omitted). The Court held that a debtor's interest in a discharge was not important enough to rebut this presumption, because "a debtor has no constitutional or 'fundamental' right to a discharge in bankruptcy." *Id.* The Court also rejected the argument that "the clear-and-convincing standard" is "required to effectuate the 'fresh start' policy of the Bankruptcy Code." *Id.*

The Ninth Circuit has not addressed whether *Grogan* has determined the bur-

den of proving that an exemption is claimed in bad faith. We are persuaded that *Grogan* has for the following reasons. First, because Congress is silent, under *Grogan* we must presume that exemptions may be disallowed for bad faith by a "preponderance of the evidence." If the right to a discharge was not important enough to rebut this presumption in *Grogan,* neither is the right to an exemption, because it is not a constitutional or "fundamental" right. Rather, allowance of exemptions in bankruptcy is a matter of congressional authorization under the Bankruptcy Code. *See Schwab v. Reilly* at 2656–58. Second, under *Grogan,* a higher standard is not necessary to protect the "fresh start" purpose of the exemption statutes. *See id.,* at 2667–68 ("exemptions in bankruptcy cases are part and parcel of the fundamental bankruptcy concept of a 'fresh start'")(internal quotation marks omitted). We find no support for the debtors' contention that the *Grogan* Court limited its reasoning to the facts of that case. Accordingly, following *Grogan,* we reject the argument that "the clear-and-convincing standard" is "required to effectuate the 'fresh start' policy of the Bankruptcy Code." 498 U.S. at 286, 111 S.Ct. 654.

The Tenth Circuit's decision in *Gillman v. Ford (In re Ford),* 492 F.3d 1148 (10th Cir.2007) supports our conclusion that *Grogan* controls the burden of proof. In *Ford,* the bankruptcy court held that there was "clear and convincing" evidence that a debtor had amended her schedules to claim an exemption in pending litigation in bad faith. *Id.* at 1153–54. The Tenth Circuit affirmed the bankruptcy court's ruling, but adopted the "preponderance of the evidence" standard instead. *Id.* at 1154, 1157. Discussing *Grogan,* the *Ford* court analogized that the "discharge of

4. The panel in *Arnold* did not decide the issue because it would have reversed the bankrupt-

cy court's decision under either standard. *See id.* at 784 n. 10.

debt under § 523 is analytically similar to obtaining an exemption in bankruptcy—in each case, the debtor is seeking a preference vis-à-vis creditors that will be sustained absent bad faith on the part of the debtor." *Id.* at 1154. The Tenth Circuit also observed that the "preponderance of the evidence" standard "reflects a fair balance between [the creditor's interest in recovering full payment of debts and the debtor's interest in a fresh start]" equally in exemption proceedings as in dischargeability actions. *Id.* at 1154–55.

Our conclusion is also reinforced by the panel's observation in *Arnold* that having different standards for exemption proceedings and dischargeability actions would create "seemingly anomalous results" after *Grogan.* 252 B.R. at 784 n. 10. For example, as the panel stated, a bankruptcy court may allow a debtor's exemption under the higher standard, but deny the same debtor a discharge under the lower one. *Id.* Following *Arnold,* we now conclude that a uniform standard will achieve a consistent balance between debtors' and creditors' interests and will avoid such anomalous results.

"Courts [after *Grogan*] are split over the question of whether bad faith or prejudice must be established by a preponderance of the evidence or by clear and convincing evidence." *In re Rolland,* 317 B.R. 402, 415 n. 19 (Bankr.C.D.Cal.2004) (collecting cases). Courts in this circuit, however, have universally applied the "preponderance of the evidence" standard. *See, e.g., id.; In re Reardon,* 403 B.R. 822, 830 (Bankr.D.Mont.2009). Moreover, although the Seventh Circuit applied the higher standard in *In re Yonikus,* 996 F.2d 866, 872 (7th Cir.1993), that court offered no explanation for doing so. *Id.* (though *citing In re Brown,* 56 B.R. at 958).

■■■■■ Second, the debtors argue that the "clear and convincing" standard is necessary to avoid infringing on exemption rights created under California law. We disagree. As the Supreme Court has recognized, bankruptcy exemptions are authorized and regulated by Congress in § 522 of the Bankruptcy Code. *See Schwab v. Reilly,* at 2658–59. Although state law may control the "nature and extent" of state law exemptions, subject to the limitations set forth in the Bankruptcy Code, "the manner in which such exemptions are to be claimed, set apart, and awarded, is regulated and determined by the federal courts, as a matter of procedure in the course of bankruptcy administration, as to which they are not bound or limited by state decisions or statutes." *In re Moore,* 274 F. 645, 648 (E.D.Mich.1921); *see also Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15, 21, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) ("Congress of course may do what it likes with entitlements in bankruptcy"). Because Congress has regulated the allowance of exemptions in bankruptcy, the Code and Rules may alter burdens of proof relating to exemptions, even if those burdens are part of the "substantive" right under state law. *See Raleigh v. Illinois Dep't of Revenue,* 530 U.S. at 21–22 and n. 2, 120 S.Ct. 1951. In implementing the provisions of § 522(*l*), Rule 4003(c) places the burden of proof on the objecting party, *see* Fed. R. Bankr.P. 4003, Advisory Committee Note ("This rule is derived from § 522(*l*) of the Code").[5] Bankruptcy

---

5. In this case, we construe the trustee's objection to a claim of exemption based on an act of bad faith to be cognizable as a matter of federal common law pursuant to Section 105(a) of the Bankruptcy Code and the inherent powers of the bankruptcy court as courts of equity to protect the integrity of the bankruptcy process. *Marrama,* 549 U.S. at 374–75, 127 S.Ct. 1105; *Latman,* 366 F.3d at 784–86. We take no position on an issue not presented in this case that the burden of proof may be different for an objection to a claim of

courts may, in turn, define that burden because of their "equitable powers to adjust rights between creditors." *Raleigh v. Illinois Dep't of Revenue,* 530 U.S. at 24, 120 S.Ct. 1951; *see also* Thomas E. Plank, *The Erie Doctrine and Bankruptcy,* 79 *Notre Dame L.Rev.* 633, 679–80 (2004).

Third, the debtors argue that the appellants waived their right to contest this issue by failing to raise it on appeal. We are mindful that, "[a]bsent exceptional circumstances, this court generally will not consider arguments raised for the first time on appeal." *See United Student Funds, Inc. v. Wylie (In re Wylie),* 349 B.R. 204, 213 (9th Cir.BAP 2006). However, "unlike a legal argument that is forfeited below, we are not obligated to apply an erroneous evidentiary standard." *In re Ford,* 492 F.3d at 1154 n. 6. Moreover, we cannot, as the panel did in *Arnold,* avoid deciding this issue because, as we explain below, the bankruptcy court could have reached a different result if it had applied a lower standard of proof.

For these reasons, as the panel suggested in *Arnold,* we hold that a party objecting to a debtor's claim of exemption must prove bad faith by a "preponderance of the evidence" and not by "clear and convincing" evidence.

### B. The Bankruptcy Court could have Found, by a Preponderance of the Evidence, that the Debtors Claimed the Exemption in Bad Faith.

"Bad faith [in claiming exemptions] is determined by an examination of the 'totality of the circumstances.'" *In re Rolland,* 317 B.R. at 414. "Concealment of assets is the usual ground for a finding of 'bad faith.'" *Id.* at 415, *citing In re*

*Arnold,* 252 B.R. at 785. However, "a debtor's intentional and deliberate delay in amending an exemption for the purpose of gaining an economic or tactical advantage at the expense of creditors and the estate [also] constitutes 'bad faith.'" *Id.* at 416.

Under the totality of the circumstances, the bankruptcy court could have found, by a "preponderance of the evidence," that the debtors concealed the value of the shares from the trustee. The bankruptcy court could have found that the debtors did not honestly believe, as they had testified, that the shares were worthless. The March 6, 2009 e-mail proposal and the April 2, 2009 agreement suggest that Nicholson was already negotiating a deal with Pall Medical on the petition date. Pall Medical was apparently a multi-billion dollar company that would procure sales for ASI throughout Europe and to the Red Cross. This relationship was, therefore, expected to produce a dramatic increase in revenues. Nicholson attested, in his opposition to the trustee's objection, that the deal with Pall Medical would "easily push total sales for this fiscal year in excess of $1Million [sic], more than double last year's sales." Also, Nicholson's April 27, 2009 buyout offer to have ASI purchase Tyner's shares was made only six weeks after the petition date. "[A]n offer to purchase an asset would normally constitute strong evidence of the asset's value, even if there is only one such offer." *Grueneich v. Doeling (In re Grueneich),* 400 B.R. 680, 687 (8th Cir. BAP 2009). Although the bankruptcy court found that the consideration for the buyout was "speculative," the court could have found that, by a preponderance of the evidence, the debtors did not believe that the shares were worthless

---

exemption on a non-federal ground, which was an issue identified by Judge Klein in his concurring opinion in the panel's decision in

*Gonzalez v. Davis (In re Davis),* 323 B.R. 732, 740–45 (9th Cir. BAP 2005) (Klein, J., concurring).

as of the petition date because such a lucrative deal was on the horizon.

■ The bankruptcy court gave little weight to the debtors' beliefs or motives, opining that "[t]he bad faith exception to Rule 1009(a) regulates bad-faith acts, not thoughts." However, a debtor's subjective intent is an important, although not determinative, factor in determining bad faith. *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir.1994).

■ We recognize that bad faith beliefs and motives are, as a matter of law, insufficient. In *Grueneich*, the debtor amended his schedules to claim an exemption in stock that he had valued at $0. 400 B.R. at 682. The Eighth Circuit BAP held that the bankruptcy court clearly erred in sustaining the trustee's objection to the amendment. *Id.* at 687. The Eighth Circuit BAP reasoned that there was no evidence, other than a recent purchase offer, that the debtor did not honestly believe that the stock had no value or that anyone was misled by the schedules. *Id.* The Eighth Circuit BAP also noted that the bankruptcy court did not allow the debtor to present evidence that the company's liabilities exceeded its assets and that the prospective buyer's motive was questionable. *Id.* Here, as in *Grueneich*, the appellants submitted an uncontested appraisal showing that ASI was underwater and had a purchase offer from an insider that may not, therefore, be reliable evidence of value.

■ Here, however, unlike in *Grueneich*, the bankruptcy court could have found that the debtors misled the trustee by testifying that the stock was worthless. The trustee likely would have abandoned the shares if Tyner had not objected because the debtors did not amend their schedules until the same day that the trustee noticed them for sale. Also, it is ap-

parently undisputed that Nicholson did not want Tyner to acquire full control of ASI. Although mere delay in claiming exemptions is insufficient evidence of bad faith, *In re Arnold*, 252 B.R. at 786, this delay, therefore, may have been a deliberate attempt by Nicholson to gain an economic or tactical advantage at the expense of his creditors. Nevertheless, we leave it to the bankruptcy court to weigh the evidence again in the first instance under the correct standard of proof.

## C. The Bankruptcy Court did not Abuse its Discretion by not Setting an Evidentiary Hearing.

■ The Fifth Amendment's requirement of due process applies in bankruptcy proceedings. *Gonzalez–Ruiz v. Doral Financial Corp. (In re Gonzalez–Ruiz)*, 341 B.R. 371, 381 (1st Cir. BAP 2006). Section 102(1)(A) of the Bankruptcy Code defines the phrase, "after notice and a hearing" as "such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). Therefore, "[t]he concept of 'notice and a hearing' is a flexible one," *In re Gonzalez–Ruiz*, 341 B.R. at 381, citing *Credit–Alliance Corp. v. Dunning–Ray Insurance Agency, Inc. (In re Blumer)*, 66 B.R. 109, 113 (9th Cir. BAP 1986), aff'd, 826 F.2d 1069 (9th Cir.1987). "The bankruptcy judge has considerable, albeit not unlimited, discretion in determining if the notice and a hearing requirement has been satisfied." *Id.*

■ Likewise, Rule 43(c) of the Federal Rules of Civil Procedure, which is applicable to contested matters under Rule 9017 of the Federal Rules of Bankruptcy Procedure, provides: "When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony

or on depositions." Under this rule, bankruptcy courts have "wide discretion" in deciding whether to take oral testimony at an evidentiary hearing. *United Commercial Insurance Service, Inc. v. Paymaster Corp.*, 962 F.2d 853, 858 (9th Cir.1992); *accord Garner v. Shier (In re Garner)*, 246 B.R. 617, 624 (9th Cir. BAP 2000).

■■■ An evidentiary hearing is generally appropriate when there are disputed and material factual issues that the bankruptcy court cannot readily determine from the record. Thus, if a contested matter in a bankruptcy case "cannot be decided without resolving a disputed material issue of fact, an evidentiary hearing must be held at which testimony of witnesses is taken in the same manner as testimony is taken in an adversary proceeding or at trial in a district court civil case." Fed. R. Bankr.P. 9014, Advisory Committee Note to 2002 Amendment. This advisory committee note "makes clear that this requirement is intended to require a trial when there is a genuine factual dispute." *In re Khachikyan*, 335 B.R. at 126 and n. 4.

■■■ However, "[n]othing in [Rule 9014(d) ] prohibits a court from resolving any matter that is submitted on affidavits by agreement of the parties." Fed. R. Bankr.P. 9014, Advisory Committee Note to 2002 Amendment. Therefore, "[w]here the parties do not request an evidentiary hearing or the core facts are not disputed, the bankruptcy court is authorized to determine contested matters ... on the pleadings and arguments of the parties, drawing necessary inferences from the record." *In re Gonzalez–Ruiz*, 341 B.R. at 381.

■■■ Rule 9014(e) requires bankruptcy courts to "provide procedures that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses may testify." The Eastern District of California has, accordingly, promulgated a local rule that provides:

> If the moving party does not consent to the Court's resolution of disputed material factual issues pursuant to FRCivP 43(e), the moving party shall file and serve, within the time required for a reply, a separate statement identifying each disputed material factual issue.... Failure to file the separate statement shall be construed as consent to resolution of the motion and all disputed material factual issues pursuant to FRCivP 43(e).

Bankr.E.D. Cal. R. 9014–1(f)(1)(iii).

■■■ We quickly dispense with the appellants' claim that this local rule, on its face, denied them due process of law. "The three-part test for the validity of a local bankruptcy rule is: (1) whether it is consistent with Acts of Congress and the Federal Rules of Bankruptcy Procedure; (2) whether it is more than merely duplicative of such statutes and rules; and (3) whether it prohibits or limits the use of the Official Forms." *In re Garner*, 246 B.R. at 624, *citing* Fed. R. Bankr.P. 9029(a)(1). Local Rule 9014–1(f)(1)(ii) easily satisfies each of these requirements. First, the rule obeys Rule 9014(e)'s directive by providing procedures that allow parties to request an evidentiary hearing. Second, the local rule supplements the Federal Rule because that Rule expressly does not provide such procedures. Third, the local rule does not prohibit or limit the use of the Official Forms.

■■■ We also reject the appellants' argument that the bankruptcy court applied the local rule in a manner that deprived them of due process. "A local rule imposing a requirement of form shall not be enforced in a manner that causes a party to lose rights because of a nonwillful failure to comply with the requirement."

Fed. R. Bankr.P. 9029(a)(2). However, the bankruptcy court appropriately interpreted the appellants' non-compliance with the notice requirement as consent to let the matter rest on the record alone. Although Tyner was not served with the debtors' opposition to the trustee's objection to the claimed exemption, she, along with the trustee who was served with the opposition, could have filed the notice of disputed material factual issue(s) with the reply, or at any time thereafter.

■ Further, even if the appellants had complied with the rule, the bankruptcy court did not abuse its discretion. Bad faith is a "highly factual determination" but does not generally require an evidentiary hearing. *C–TC 9th Ave. Partnership v. Norton Co. (In re C–TC 9th Ave. Partnership)*, 113 F.3d 1304, 1312 (2nd Cir. 1997). The appellants argue that whether Nicholson wrote the Notes was a material and disputed fact. However, the appellants had every opportunity to prove this fact without Nicholson's testimony. They retained the full range of rights to discovery in this contested matter, *see In re Khachikyan*, 335 B.R. at 126, and were even permitted to supplement the record with declarations and other evidence. Thus, the bankruptcy court was able to determine this disputed fact from the record alone. Again, however, since we remand this matter for further proceedings, the bankruptcy court may, in the exercise of its discretion, determine whether an evidentiary hearing is appropriate.

## VI. CONCLUSION

Because we conclude that the bankruptcy court applied the incorrect burden of proof to the trustee's objection to the debtors' claim of exemption, we VACATE the bankruptcy court's order overruling the trustee's objection and REMAND this matter for further proceedings consistent with this opinion.