**In re David J. GLIMCHER, Debtor.**

**No. 2:11–bk–15333–RJH.**

United States Bankruptcy Court,
D. Arizona.

Sept. 26, 2011.

Carolyn J. Johnsen, Jennings Strouss and Salmon PLC, Phoenix, AZ, for Debtor.

## OPINION RE EXEMPTIONS FOR INSURANCE AND AUTO

RANDOLPH J. HAINES, Bankruptcy Judge.

The Chapter 7 Trustee and PNC Bank have filed timely objections to several of the exemptions claimed by Debtor David Glimcher. This decision addresses only the objections to the exemptions claimed for the John Hancock life insurance policy and the motor vehicle.

### The Life Insurance Exemption

The Debtor has claimed an exemption for a John Hancock variable life insurance policy that has a cash surrender value slightly in excess of $24,000. It is undisputed that the only beneficiary of this life insurance policy is the Debtor's former spouse, from whom the Debtor was divorced prior the filing of this bankruptcy case.

The exemption is claimed pursuant to A.R.S. § 20–1131(D)[1] which provides in pertinent part:

> If, for a continuous, unexpired period of two years, a policy of life insurance has named as beneficiary the insured's surviving spouse, child, parent, brother, sister or any other dependent family member, then, in event of bankruptcy or in any proceeding before any court in this state, the cash surrender value of the insurance, in the proportion that the policy names any such beneficiary, shall be exempt from claims and demands of all creditors.... For the purposes of this subsection, "dependent" means a family member who is dependent on the insured for not less than half support.[2]

The Trustee and PNC Bank object to this claimed exemption because the policy does not name as beneficiary any of the beneficiaries identified in the statute, which does not include a former spouse. The Debtor responds that the policy should qualify for the exemption because the named beneficiary was the Debtor's spouse at the commencement of the two-year period prior to the filing of this bankruptcy;[3] because the statute does not indicate that a policy that initially qualified for the exemption loses that qualification upon divorce; and because the parties' divorce decree requires that the Debtor maintain the insurance policy.

The Arizona exemption statute makes clear that the qualifications for the exemption must be established as of the time of bankruptcy or any other judicial proceed-

---

1. Pursuant to A.R.S. § 33–1133(B), Arizona has opted out of the federal exemptions as permitted by 11 U.S.C. § 522(b).

2. A virtually identical exemption is also provided by A.R.S. § 33–1126(A)(6).

3. The bankruptcy case was filed on May 26, 2011, so the commencement date for this two year period was May 26, 2009. The divorce and property settlement were negotiated, mediated and agreed to in the spring of 2010, and the divorce became final in the summer of 2010.

ing, rather than at either the beginning or the end of any two-year period. As of the time of this bankruptcy case, the policy did not name as a beneficiary the insured's spouse, nor had it done so for a continuous, unexpired period of two years prior to the bankruptcy filing. Because the insurance policy did not satisfy the requirements as of the filing of the bankruptcy case, it is not exempt. The parties' prepetition divorce decree cannot expand the parties' exemption rights beyond what the statute allows.[4]

There may also be another reason why this life insurance policy does not qualify for the exemption, even if the statute's reference to "spouse" could be interpreted to include a former spouse. The statute also provides that the term "dependent" means "a family member who is dependent on the insured debtor for not less than half support." In *Hummel*,[5] the Ninth Circuit BAP recently held that the statutory requirement that the beneficiary be a dependent family member is also a requirement that applies to each of the five specifically identified relatives. Consequently it is not sufficient for the exemption that the beneficiary merely be one of those specified relatives, unless that relative is also dependent on the debtor for at least half support, according to the holding of *Hummel*. The objectors claim that the ex-spouse is not such a dependent, and the Debtor has come forward with no argument or evidence that she is so dependent. Consequently the policy may not qualify as ex-empt due to the lack of such dependency, even if the term "spouse" were interpreted to include an ex-spouse. Given the Court's conclusion that a policy for which the only beneficiary is an ex-spouse does not qualify, however, this issue need not be reached unless that conclusion is reversed on appeal.

For these reasons, the claimed exemption of the John Hancock life insurance policy is denied and the objections to that claimed exemption are sustained.

### The Chevy Tahoe

█ When the Debtor initially filed his schedules on May 27, he claimed on Schedule B that he did not own any automobile, did not claim any exemption for an automobile on Schedule C, and did not show any debt secured by an automobile on Schedule D. But after the first meeting of creditors on July 1, he filed amendments to Schedules B, C and D on July 6 listing ownership of a 2009 Chevy Tahoe LTZ having a current value of $28,000, claiming the $5,000 exemption provided by A.R.S. § 33–1125(8), and reflecting a debt to Ally Bank secured by the Tahoe in the amount of $11,428.

The Trustee objects to the claimed exemption because the asset was not disclosed on the initial schedules or until the Trustee inquired about it at the first meeting of creditors. The Trustee argues alternatively that any exemption allowed for this vehicle be surcharged by the amount such a vehicle could rent for on a weekly

---

4. The Trustee and PNC Bank also objected that in approximately January, 2010, the Debtor had repaid a $26,000 loan against the policy, and absent such repayment there would have been no cash surrender value. That objection is moot in light of the Court's determination that the entire cash surrender value of the policy is not exempt. Query, though, whether the intent of A.R.S. § 20–1131(D) is only to exempt the cash surrender value that had been in effect for a continuous, unexpired period of two years prior to the bankruptcy, or whether such a loan payment could be deducted from the cash surrender value as a fraudulent transfer, which the statute specifically makes available to recover any premiums paid with intent to hinder, delay or defraud creditors.

5. *Nowak v. Hummel (In re Hummel)*, 440 B.R. 814, 820 (9th Cir. BAP 2010).

basis for the eight weeks between the filing of the case and the turnover of the vehicle to the Trustee, which the Trustee calculates at almost $7,000 and in excess of the $5,000 exemption.

The Debtor responds that the vehicle had been titled in the name of his former spouse, that he was awarded the vehicle in the divorce decree in the summer of 2010, but that between the time of the divorce decree and the bankruptcy no transfer of title had occurred. Therefore, according to the Debtor, "at the time of the filing, there was a legitimate question as to whether the Debtor had the right to claim the vehicle and the exemption." The Debtor does not explain what that "question" was. He also argues that, "after the ownership issue was resolved," the Debtor promptly amended his schedules as soon as the oversight was brought to his attention at the first meeting of creditors. The Debtor does not explain what occurred to "resolve" the "ownership issue." Finally, he notes that "information regarding the Tahoe was included" in the schedules. Apparently this refers to the fact that his ten page answer to statement of affairs question No. 3 reflected an October 6, 2010 payment to Ally Bank in the amount of $326.85 with the memo "2009 Chevy Tahoe."

Neither the Debtor's response nor his counsel's argument at the hearing on the objections contains any explanation as to what was the "legitimate question" as to "ownership." It is undisputed that he was awarded the vehicle by the divorce judgment in the summer of 2010. There is no

dispute that he has been driving the vehicle at least since then. There is no dispute that he has been paying the debt apparently secured by the vehicle. There is no explanation why he did not retitle the vehicle in his own name pursuant to the divorce decree.

From the undisputed facts, it is clear there was no "legitimate question" as to "ownership." Bankruptcy Code § 541(a)(1) makes unmistakably clear that the estate includes both legal and equitable interests of the debtor in property as of the commencement of a case. Of course all bankruptcy practitioners know that while the estate is defined by the Bankruptcy Code, state law defines what constitutes "property."[6] Virtually since statehood, the Arizona Supreme Court has recognized that ownership of both real and personal property hinges on "the rights in the owner to control, handle and dispose of the thing owned," rather than on title.[7] Consequently for purposes of signing an annexation petition that must be signed by owners of the property, the court held that purchasers under contracts for deed qualify as "owners" notwithstanding their lack of title.[8] The court also held that servicemen "who are equitable as well as those who are legal owners of property" are protected by the Soldiers' and Sailors' Civil Relief Act, even though title was held by the soldier's mother.[9] The court has held that where one party holds all of the other rights of ownership except for bare legal title, that holder is recognized as "the owner of equitable title," and such "inter-

---

**6.** *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Although the Debtor himself is apparently not a bankruptcy practitioner, his answer to Statement of Affairs ¶ 9 reflects payment of $40,000 to his bankruptcy counsel fifteen days before the filing of the case, and another $119,000 on the day of filing.

**7.** *Hardinge v. Empire Zinc Company,* 17 Ariz. 75, 90–91, 148 P. 306, 312 (1915).

**8.** *City of Phoenix v. State ex rel. Harless,* 60 Ariz. 369, 137 P.2d 783, 786 (1943).

**9.** *Twitchell v. Home Owners' Loan Corporation,* 59 Ariz. 22, 122 P.2d 210 (1942).

est constitutes a vested interest in the property itself and not merely a chose in action or a right to profits." [10] And the Court of Appeals has held that because "we will not exalt form over substance" and "ownership" should be given the "widest variety of construction, usually guided in some measure by the object sought to be accomplished" by a statute, members of a housing cooperative were deemed to be owners of real property "notwithstanding the existence of an 'authentic instrument' vesting title and deed" in the respondent corporation.[11]

Therefore under either Arizona law or the Bankruptcy Code, there has been no "legitimate question" as to who owned the Chevy Tahoe since the entry of the divorce decree. Nor, if there had been any such question, does this record reflect anything occurring between the filing of the case and the first meeting of the creditors as a result of which "the ownership issue was resolved." The only relevant occurrence was the Trustee's questions at the first meeting of creditors.

Although the Debtor would ordinarily be entitled to a $5,000 exemption for a motor vehicle, the Trustee and PNC Bank object to that claimed exemption on grounds of bad faith. Although the Code does not so provide, they rely on a number of Ninth Circuit and Ninth Circuit BAP cases holding that exemptions may be denied for bad faith and that delay in disclosure or con-

cealment of assets is the usual ground for finding such bad faith.[12] They also argue that bad faith can be inferred from intentional concealment of assets, and that "intentional concealment can be inferred from the facts and circumstances of a case, including nondisclosure resulting from a debtor's reckless disregard for the truth of information furnished in the schedules and statements." [13]

Based on this case law, it is true that the Court here can infer intentional concealment of the Tahoe as an asset of this estate, and from that infer bad faith. Based on this record, it is simply inconceivable to the Court that the Debtor either overlooked this valuable asset or that he really believed it was not his, notwithstanding the divorce decree.

■ However, intentional concealment may not be sufficient, by itself, to find bad faith. This is because bad faith usually must be determined by an examination of the totality of the circumstances.[14] A debtor's subjective intent is an important, although not determinative, factor in determining bad faith.[15] The Debtor claims that his failure to list the asset was innocent, apparently because he thought there was a "legitimate question," at least in his mind, as to his ownership interest in the Tahoe. An evidentiary hearing is generally required when there are disputed and material factual issues that cannot readily

10. *Dunlap Investors Ltd. v. Hogan,* 133 Ariz. 130, 650 P.2d 432 (1982).

11. *Kadera v. Superior Court,* 187 Ariz. 557, 563–64, 931 P.2d 1067, 1073–74 (App.1996). *See also Cutter Aviation, Inc. v. Maricopa County,* 191 Ariz. 485, 490–91, 958 P.2d 1, 6 (App.1998).

12. *In re Michael,* 163 F.3d 526, 529 (9th Cir. 1998); *In re Nicholson,* 435 B.R. 622, 634 (9th Cir. BAP 2010); *In re Arnold,* 252 B.R.

778, 785–89 (9th Cir. BAP 2000); *In re Andermahr,* 30 B.R. 532, 534 (9th Cir. BAP 1983).

13. *In re Rolland,* 317 B.R. 402, 414 (Bankcy.C.D.Cal.2004), cited in *Nicholson, supra,* 435 B.R. at 634.

14. *Nicholson, supra.,* 435 B.R. at 634.

15. *Id.* at 635, citing *Marsch v. Marsch,* 36 F.3d 825, 828 (9th Cir.1994).

be resolved from the record alone.[16] The Debtor should be given an opportunity to explain, under oath, both his innocence and the "legitimate question" in his mind, and the Court should be given the opportunity to witness his demeanor while doing so.

Consequently the Court concludes that an evidentiary hearing is required to determine if bad faith exists under the totality of the circumstances.

IT IS ORDERED setting a two hour final evidentiary hearing for Tuesday, November 8, 2011 commencing at 1:30 p.m. All parties who wish to present evidence, examine witnesses or make argument at this hearing shall join in filing a joint pretrial statement pursuant to the Local Rule by 5:00 p.m. November 1.