**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-14-1446-KuFKi |
| ) | |
| LAVESTA M. LOCKLIN, ) | Bk. No.   13-24951 |
| ) | |
| Debtor. ) | |
| _____) | |
| ) | |
| RELIANCE STEEL & ALUMINUM CO., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| LAVESTA M. LOCKLIN, ) | |
| ) | |
| Appellee. ) | |
| _____) | |

Argued and Submitted on October 22, 2015
at Los Angeles, California

Filed – December 7, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark D. Houle, Bankruptcy Judge, Presiding

_____

Appearances:    Robert P. Goe of Goe & Forsythe, LLP argued for
appellee LaVesta M. Locklin.[**]

_____

Before: KURTZ, FARIS and KIRSCHER, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[**]Counsel for appellant Reliance Steel & Aluminum Co. did not appear for oral argument, so appellant's position was deemed submitted on its appeal briefs and on the appellate record.

# INTRODUCTION

Reliance Steel & Aluminum Co. appeals from an order disallowing the claim it filed in LaVesta Locklin's chapter 11[1] bankruptcy case. In disallowing the claim, the bankruptcy court held that no evidentiary hearing was required under Rule 9014(d) because Reliance's papers responding to Locklin's claim objection did not include any evidence demonstrating that there was a disputed material factual issue requiring resolution at an evidentiary hearing.

We disagree with the bankruptcy court. Reliance's properly filed proof of claim constituted prima facie evidence of the validity of Reliance's claim, including the allegations contained therein contending that Locklin was the alter ego of her wholly owned corporation Nightscaping, Inc. When these allegations are considered in conjunction with the opposing evidence Locklin presented with her claim objection, they establish that there was a disputed issue of material fact regarding the alter ego issue. Therefore, the bankruptcy court abused its discretion when it denied Reliance's request for an evidentiary hearing.

Therefore, we must VACATE the bankruptcy court's claim disallowance order and REMAND for further proceedings.

# FACTS

In February 2014, Reliance filed a proof of claim for $17,205.58 in Locklin's bankruptcy case. Reliance did not

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

include with its proof of claim any documentation and did not explain the basis for its claim, other than to state that the claim was for "goods and services." Locklin filed an objection to that claim, which the bankruptcy court sustained with leave to amend.[2]

On June 10, 2014, Reliance filed its amended proof of claim. This time, Reliance included enough documentation and explanation with its proof of claim that the basis for its claim was apparent. Reliance's claim against Locklin allegedly arose from a credit arrangement between Reliance on the one hand and Locklin's wholly-owned corporations Nightscaping, Inc. and Loran, Inc. on the other hand.[3] Pursuant to this credit arrangement, Reliance supplied to Nightscaping, on credit, stainless steel sheeting. Reliance effectively acknowledged in its amended proof of claim that Locklin was not directly liable for Nightscaping's trade debt. Instead, Reliance alleged that Locklin was Nightscaping's alter ego.

In support of its alter ego allegation, Reliance included in its proof of claim numerous conclusory, boilerplate statements

[2]Reliance did not include in its excerpts of record a copy of its February 2014 proof of claim, nor did it include copies of Locklin's March 2014 claim objection, or the bankruptcy court's June 2014 order sustaining that objection with leave to amend. We have obtained copies of these documents by accessing the bankruptcy court's electronic docket. We can and do take judicial notice of the docket and the imaged documents attached thereto. Goldstein v. Stahl (In re Goldstein), 526 B.R. 13, 17 (9th Cir. BAP 2015).

[3]For purposes of this appeal, there is no material difference between Nightscaping and Loran. For ease of reference, both are jointly referred to herein as Nightscaping.

3

that, if proven, might have supported alter ego liability against Locklin under California law.  See CADC/RAD Venture 2011-1 LLC v. Bradley, 235 Cal. App. 4th 775, 788-89 (2015), review denied, (July 8, 2015) (generally describing circumstances that might lead to a finding of alter ego liability).  As set forth in the proof of claim, Reliance alleged as follows:

> On information and belief, some or all of the following facts and factors for alter ego liability exist to impose individual liability on Lavesta Locklin for that [sic] acts and omissions of Nightscaping and Loran:
>
> a.   The business is inadequately capitalized,
>
> b.   The business is operated by Locklin as if it is herself,
>
> c.   The business fails to observe corporate formalities,
>
> d.   There is a commingling of funds and other assets,
>
> e.   There is the holding out by one entity that it is liable for the debts of the other,
>
> f.   The corporation is a mere shell or conduit for the affairs of the individual,
>
> g.   There is identical ownership, management, and control, where the corporation is completely owned, managed, and controlled by the individual,
>
> h.   The use of the corporation as a mere shell, instrumentality or conduit for a single venture or the business of the individual,
>
> i.   The individual using the corporation's income and assets and resources to pay herself large amounts of compensation, while failing to pay the legitimate creditors of the corporation,
>
> j.   The use of the corporate entity to procure labor, services or merchandise for the individual,
>
> k.   The diversion of assets from the corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the

4

manipulation of assets and liabilities between entities and individuals so as to concentrate the assets in one and the liabilities in another,

1. The contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions,

m. The use of a corporation to avoid personal liability, while the individual takes the income and value from the corporation to have a luxurious personal lifestyle, while failing to pay creditors, who should be entitled to pursue the assets and value into the individual rather than being limited to pursuing the corporation,

n. Incurring debts far beyond the ability to pay, purportedly only as corporate liabilities, and then declaring bankruptcy to discharge those debts to creditors, while maintaining a luxurious individual lifestyle.

Amended Proof of Claim (June 10, 2014) at pp. 5-6.

On July 8, 2014, Locklin filed her objection to Reliance's amended proof of claim ("Second Claim Objection"). The Second Claim Objection focused on and attacked Reliance's alter ego allegations. Locklin supported her Second Claim Objection with declarations and exhibits. Her declaration told a much different story than that suggested by Reliance's alter ego allegations. Locklin explained that her husband founded Nightscaping in 1963 and successfully designed, manufactured and sold landscape lighting products through Nightscaping for decades. When her husband passed away in 2007, she became the sole owner of Nightscaping. Thereafter, Nightscaping's business quickly and significantly deteriorated, with revenues falling by 70% in 2008 and by 80% in 2009. As Locklin puts it, between 2009 and 2011, she invested over $1.7 million of her own personal funds in

5

Nightscaping in an attempt to turn around operations, but all of this investment capital was consumed as a result of poor business planning and management.

As a result, in June 2011, she hired a professional senior management team in an attempt, once again, to turn around Nightscaping. According to Locklin, once she hired the management team, she was not involved in Nightscaping's day-to-day operations. She further asserted that she invested in Nightscaping another $1.2 million in 2011 and 2012. Again in 2013, Locklin claims that she invested further funds in an attempt to keep Nightscaping's doors open while the management team negotiated a sale of the business as a going concern to a third party for $3 million, but that sale fell through as a result of the third party's inability to obtain financing. Because she had borrowed funds to make many of her capital investments in Nightscaping, Locklin explained that she ended up heavily indebted and ultimately was forced to file her personal chapter 11 bankruptcy petition.

The Second Claim Objection also included the declaration of Nightscaping's chief executive officer Richard Henninger – one of the members of Nightscaping's turnaround management team. Henninger explained that, as chief executive officer, he was in possession of Nightscaping's books and records, and that, in 2014, he searched those records for all transactions between Nightscaping and Reliance. According to Henninger, those records reflected that, between 2006 and 2012, Nightscaping received 95 invoices for credit purchases from Reliance and that Nightscaping fully paid 94 of those 95 invoices. Furthermore,

Henninger corroborated Locklin's testimony that she had no involvement in Nightscaping's day-to-day operations in 2012 and that, at the time Nightscaping made the 2012 purchase from which Reliance's claim arose, Locklin had no responsibility for making purchasing decisions on behalf of Nightscaping and had no reason to even know about individual purchasing decisions.

Henninger further opined that Nightscaping's 2012 credit purchase from Reliance was made in good faith and in the ordinary course of Nightscaping's business and that Nightscaping, at the time, was in the process of implementing its turnaround business plan, which was aimed at selling the business as a going concern. Finally, Henninger maintained that, during his entire tenure as chief executive officer, Nightscaping complied with all corporate formalities.

Reliance filed a response to the Second Claim Objection, but the response was quite brief and did not include any evidence. The entire response consisted of four short paragraphs, in which Reliance merely asserted that, at the upcoming hearing on the Second Claim Objection, the bankruptcy court should set a schedule for discovery, briefing and an evidentiary hearing in light of the fact that the Second Claim Objection involved a disputed material issue of fact, namely whether Locklin was Nightscaping's alter ego.

At the hearing on the Second Claim Objection, the bankruptcy court disagreed with Reliance. The court held that, because Locklin had presented evidence tending to refute Reliance's alter ego allegations and because Reliance had not submitted any evidence in support of its alter ego allegations, there was no

material factual issue, so no evidentiary hearing was necessary. Rather, according to the court, Reliance had been obligated under the court's local rules to provide evidence in support of its claim contemporaneously with its opposition to the Second Claim Objection, and because of Reliance's failure to include any such evidence on the alter ego issue, Locklin's Second Claim Objection would be sustained and Reliance's claim would be disallowed.

The bankruptcy court entered an order disallowing Reliance's amended claim on August 29, 2014, and Reliance timely appealed the claim disallowance order.

Locklin had included in her Second Claim Objection a request for attorney's fees, which the bankruptcy court denied without prejudice. After Reliance filed its notice of appeal, Locklin filed a motion for attorney's fees as the prevailing party on its Second Claim Objection. After briefing and a hearing, the bankruptcy court entered an order on December 5, 2014, granting Locklin's attorney's fees motion. Reliance did not timely file a notice of appeal from the fees order. Eventually, on January 7, 2015, Reliance filed a "Supplemental" notice of appeal, in which it requested appellate review of the fees order as part of its appeal from the claim disallowance order.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). Except as otherwise noted below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Was the appeal from the order awarding attorney's fees timely filed?

8

2.  Is the appeal from the order disallowing Reliance's amended proof of claim moot?

3.  Did the bankruptcy court commit reversible error when it disallowed Reliance's amended proof of claim?

**STANDARDS OF REVIEW**

We have an independent duty to examine our jurisdiction, and we review jurisdictional issues de novo. Couch v. Telescope, Inc., 611 F.3d 629, 632 (9th Cir. 2010); Wolkowitz v. Beverly (In re Beverly), 374 B.R. 221, 230 (9th Cir. BAP 2007), aff'd in part, dismissed in part, 551 F.3d 1092 (9th Cir. 2008).

Orders resolving claims objections can raise both legal issues and factual issues. We review the legal issues de novo and the factual issues under the clearly erroneous standard. See Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 918 (9th Cir. BAP 2011).

The bankruptcy court's decision not to conduct an evidentiary hearing is reviewed for an abuse of discretion. Tyner v. Nicholson (In re Nicholson), 435 B.R. 622, 636 (9th Cir. BAP 2010), partially abrogated on other grounds by, Law v. Siegel, 134 S. Ct. 1188, 1196-98 (2014). The bankruptcy court abused its discretion if it incorrectly construed or applied the law or its factual findings were clearly erroneous. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

**DISCUSSION**

**A.  Timeliness Issue re Appeal From Attorney's Fees Order**

A timely-filed notice of appeal is mandatory and jurisdictional. Browder v. Dir., Dep't of Corr. of Ill., 434 U.S. 257, 264 (1978); Hunt v. City of Los Angeles, 638 F.3d

9

703, 719 (9th Cir. 2011). When the appellant fails to timely file a notice of appeal from a post-judgment order awarding attorney's fees, the appellate court lacks jurisdiction to review the fees order. Id.; Farley v. Henderson, 883 F.2d 709, 712 (9th Cir. 1989) (citing Culinary & Serv. Employees Union, Local 555 v. Haw. Employee Benefit Admin., 688 F.2d 1228, 1232 (9th Cir. 1982)).

Here, Reliance's January 7, 2015 supplemental notice of appeal was untimely. The bankruptcy court entered its fee order on December 5, 2014, and pursuant to Rule 8002(a)(1), the last day to timely file a notice of appeal therefrom was December 19, 2014. Reliance argues that its belated supplemental notice of appeal referencing the fees order should relate back to the date of the filing of its appeal from the claim disallowance order. We disagree. The above-cited Ninth Circuit decisions stand for the proposition that a **timely** supplemental notice of appeal must be filed from a post-judgment fees order.

Because Reliance's appeal of the fees order was untimely, we lack jurisdiction to review the bankruptcy court's fees order.

**B. Mootness Issue re Claim Disallowance Order**

An appeal is constitutionally moot if it has become impossible for the appellate court to fashion meaningful relief. Ederel Sport, Inc. v. Gotcha Int'l L.P. (In re Gotcha Int'l L.P.), 311 B.R. 250, 254 (9th Cir. BAP 2004) (citing Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992)).

Here, after Reliance appealed the claim disallowance order, the bankruptcy court entered an order granting Locklin's request to dismiss her bankruptcy case. The case dismissal order has not

been appealed, and its entry raises the question of whether this appeal has been rendered moot. See Omoto v. Ruggera (In re Omoto), 85 B.R. 98, 100 (9th Cir. BAP 1988) ("The general rule, when an underlying bankruptcy case is dismissed, is that it 'may indicate that no case or controversy remains with respect to issues directly involving the reorganization of the estate.'").

While the dismissal of the underlying bankruptcy case sometimes renders moot a pending appeal arising from that case, that is not what happened here. The bankruptcy court's dismissal order explicitly stated that both its claim disallowance order and its fees order would remain effective notwithstanding the dismissal of Locklin's bankruptcy case. The case dismissal order also provided for the bankruptcy court's post-dismissal retention of jurisdiction in the event that any of the matters taken up on appeal were remanded for further proceedings. Most importantly, the case dismissal order contemplated the payment in full of all allowed general unsecured claims, which in light of our ruling in this appeal conceivably could eventually include Reliance's claim. Under these circumstances, the appeal from the claim disallowance order is not moot.

**C.    Substantive Review of Claim Disallowance Order**

"The filing of an objection to a proof of claim 'creates a dispute which is a contested matter' within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief." Lundell v. Anchor Const. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000) (quoting Adv. Comm. Notes accompanying Rule 9014). As amended in 2002, Rule 9014 generally requires bankruptcy courts

11

to resolve contested matters only after holding an evidentiary hearing at which the testimony of witnesses is taken in the same manner as it is in adversary proceedings. See Rule 9014(d) and accompanying Adv. Comm. Note. There are two exceptions to this rule: (1) the court may, if the parties so stipulate, decide the contested matter based on the parties's affidavits and exhibits; and (2) the court may dispense with the evidentiary hearing requirement when there are no "disputed material factual issues" presented. Id.; see also Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC), 481 B.R. 34, 44 (9th Cir. BAP 2012). Put another way, "Where the . . . core facts are not disputed, the bankruptcy court is authorized to determine contested matters . . . on the pleadings and arguments of the parties, drawing necessary inferences from the record." In re Caviata Attached Homes, LLC, 481 B.R. at 45-46 (quoting In re Nicholson, 435 B.R. at 636).

Here, the bankruptcy court noted the alter ego allegations set forth in the amended proof of claim and acknowledged Reliance's request for the court to set an evidentiary hearing. But the court declined to do so. No evidentiary hearing was necessary, the court reasoned, because Reliance had not included with its written claim objection response any declarations or exhibits tending to demonstrate that Locklin was Nightscaping's alter ego. Consequently, the court ruled, the alter ego issue was not a disputed material factual issue for purposes of Rule 9014(d) because the only evidence before the court – Locklin's evidence – tended to demonstrate that Locklin was not Nightscaping's alter ego.

12

We cannot uphold this ruling of the bankruptcy court. The alter ego allegations in the amended proof of claim constituted "some evidence" in support of Reliance's alter ego theory. Wright v. Holm (In re Holm), 931 F.2d 620, 623 (9th Cir. 1991) (citing 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed. 1991)). Indeed, the bankruptcy court acknowledged the prima facie validity of Reliance's amended proof of claim based on its alter ego theory. This acknowledgment is consistent with the Federal Rules of Bankruptcy Procedure and Ninth Circuit authority. Rule 3001(f) provides that "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." And our Court of Appeals has held that the **allegations** set forth in a properly-filed proof of claim constitute prima facie evidence for purposes of ruling on a claim objection. Lundell, 223 F.3d at 1040 ("Claimants alleged in their proofs of claim that Lundell was a West Coast general partner, which is prima facie valid.").

In Lundell, the bankruptcy court weighed the evidence at an evidentiary hearing at which both sides presented evidence in support of their respective positions. Id. at 1037. Here, in contrast, the bankruptcy court refused to hold an evidentiary hearing. While the bankruptcy court here concluded that there was no factual dispute – no conflicting evidence – for which it needed to hold an evidentiary hearing, this conclusion was incorrect. The bankruptcy court here weighed the evidence presented by both sides and determined that Reliance's alter ego evidence was de minimis and Locklin's contrary evidence was credible. These two determinations constituted the resolution of

13

a material factual dispute, which the bankruptcy court only should have resolved after holding an evidentiary hearing, per Rule 9014(d).

According to the bankruptcy court, its local rules – namely C.D. Cal. L. Bankr. R. 9013-1(f) and (i) – required Reliance to include with its written response to the Second Claim Objection the evidence it wished to submit on the alter ego issue. Having not done so, the court ruled, Reliance failed to meet its burden to demonstrate the existence of a disputed material factual issue requiring an evidentiary hearing. As the bankruptcy court explained to Reliance at oral argument:

> I think your burden in your response was to present evidence, and I'll turn back to other local bankruptcy rules. 9013-1(f) and (i) both require as part of an opposition that you include evidence as well as the legal argument on which you base your opposition for, among other things, due process concerns.
>
> Ultimately, that wasn't done in any respect. And so I think in terms of the shifting of the burdens with respect to a claim objection, you, sir, you failed to satisfy your burden, the Claimant's ultimate burden of persuasion, by presenting evidence as part of your response to raise an issue of fact in part, because there is no evidence presented with your initial claim. So there's no evidence at all supporting your assertions that Ms. Locklin is the alter ego of Nightscaping.

Hr'g Tr. (Aug. 19, 2014) at 5:21-6:9.

The manner in which the bankruptcy court applied its local rules shifted the timing and manner of presenting evidence from an evidentiary hearing to the briefing portion of the claim objection proceedings. In this sense, the bankruptcy court's application of its local rules impermissibly contravened the Federal Rules of Bankruptcy Procedure by altering the procedural scheme for resolving claim objections set forth in Rule 9014(d).

14

See Rule 9029(a)(1) (authorizing courts to promulgate local rules only to the extent they are consistent with the Federal Rules of Bankruptcy Procedure); see also Garner v. Shier (In re Garner), 246 B.R. 617, 624 (9th Cir. BAP 2000) (citing Rule 9029(a)(1) and noting that local rules must be consistent with the Federal Rules of Bankruptcy Procedure).[4]

In addition, by weighing the evidence presented by both sides and finding for Locklin on the alter ego issue, the bankruptcy court conflated its initial duty to ascertain whether there existed a disputed material factual issue with its ultimate duty to resolve factual disputes by weighing the evidence. Consequently, the bankruptcy court committed reversible error when it disallowed Reliance's claim without holding an evidentiary hearing.

It also is worth noting that the bankruptcy court was insistent that its ruling did not amount to a grant of summary judgment. Summary judgment procedures are available in bankruptcy court contested matters, see Rule 9014(c)

---

[4]In In re Garner, this panel upheld the validity of a local rule requiring those objecting to proofs of claim to submit with their claims objections evidence sufficient to overcome the prima facie validity of a properly-filed proof of claim. In relevant part, In re Garner held that this local rule was consistent with Rules 3007 and 9014. We need not further address In re Garner because it dealt with the requirements for claims objections and not, as implicated here, the requirements for responses to claims objections. However, we do note that In re Garner was decided before Rule 9014 was amended in 2002 to require evidentiary hearings in contested matters and that some of In re Garner's reasoning depended on the bankruptcy court's discretion, before the 2002 amendments, to decide disputed material factual issues on affidavits. See In re Garner, 246 B.R. at 623-24.

15

(incorporating Civil Rule 56), and the bankruptcy court here could have sua sponte invoked the summary judgment process if it believed, based on the parties' papers, that the claim objection presented no genuinely disputed issues of material fact. See Norse v. City of Santa Cruz, 629 F.3d 966, 971-72 (9th Cir. 2010).

However, before sua sponte granting summary judgment, courts first must give the adverse party adequate opportunity to avail itself of summary judgment procedures, which are designed to flesh out whether a genuinely disputed issue of material fact exists. Id. Here, the evidentiary record presented at the initial hearing on Locklin's Second Claim Objection arguably suggested that there was no "genuine" issue of material fact within the meaning of seminal summary judgment decisions like Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Regardless, Reliance was not given adequate notice and opportunity to avail itself of summary judgment procedures designed to test this notion.

Nothing in our decision should be construed to suggest that the bankruptcy court is obliged on remand to give Reliance more time to conduct discovery. Reliance's opening appeal brief mentions discovery only once, and then only in passing. As a result, Reliance has forfeited the issue of whether the bankruptcy court erred by not giving it more time to conduct discovery. See Christian Legal Soc'y v. Wu, 626 F.3d 483, 487-88 (9th Cir. 2010); Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010).

Moreover, even if Reliance had properly preserved for appeal

16

the discovery issue, the record reflects that Reliance had ample time to conduct discovery. As early as September 2013, when Reliance filed a state court complaint against both Locklin and Nightscaping, Reliance already had stated that the basis of its claim against Locklin arose from alter ego principles. See Complaint (Sept. 11, 2013) – attached as Exhibit 3 to Reliance's June 10, 2014 amended proof of claim ("LaVesta Locklin is liable for the debt pursuant to the doctrine of alter ego."). Thus, at the time it filed its initial proof of claim in February 2014, Reliance already knew that its claim against Locklin ultimately depended on it being able to prove that Locklin was Nightscaping's alter ego. This need to prove its alter ego allegations was further driven home when Locklin filed her first claim objection in March 2014 and when the court sustained the first claim objection in June 2014 (with leave to amend). Yet there is nothing in the record indicating that Reliance made any effort to conduct discovery at any time during the claim proceedings – from the February 2014 filing of its original proof of claim to the August 2014 entry of the order disallowing its amended proof of claim. Nor is there anything in the record indicating any legitimate reason why Reliance was unable to conduct the requisite discovery while its bankruptcy claim against Locklin was pending.

Finally, at the end of its opening brief, Reliance requested that this panel order that the dispute between the parties, on remand, be reassigned to another bankruptcy judge. We deny that request. Reliance did not attempt to explain why it believes reassignment is necessary. Furthermore, if Reliance believes

17

that reassignment is justified based on some particular conduct of the bankruptcy court, Reliance in the first instance should have filed a motion for recusal in the bankruptcy court and should have followed all applicable procedural rules for requesting such relief. See generally United States v. Studley, 783 F.2d 934, 939-40 (9th Cir. 1986).[5]

## CONCLUSION

For the reasons set forth above, we VACATE the bankruptcy court's claim disallowance order, and we REMAND for further proceedings consistent with this decision.

---

[5]On appeal, after we set this matter for oral argument, Reliance filed a motion to continue oral argument, which we denied. Reliance then filed additional requests for relief regarding oral argument and attempted to support these requests with a request for judicial notice. We addressed all of these requests in our decision disposing of Reliance's and Opperwall's companion appeal (BAP No. CC-15-1008-KuFKI), and we deny those requests for purposes of this appeal for the same reasons as stated therein.

18